No. 14,450.

STATE OF LOUISIANA VS. JOSEPH M. LEO.

SYLLABUS.

1. Where the alleged falsely altered instrument, with the uttering of which a party stands charged in an indictment, is not full and complete on its face, but requires the introduction of evidence of extrinsic facts to make it such, such extrinsic facts must be set out in the indictment.

2. It does not suffice in a criminal statute that its purpose should be manifest; to be effective, that purpose must find expression in its language as required by legal rules. Courts may be authorized sometimes to restrain the generality of the terms of a law so as to exclude from its operation exceptional cases, but not to enlarge the terms of a limited law.

APPEAL from the Criminal District Court, Parish of Orleans— *Baker, J.*

Defendant has appealed from a sentence to the penitentiary at hard labor for two years "for the crime of uttering and publishing as true a false, altered, forged and counterfeited bond."

In the indictment upon which he was tried and convicted it was charged that he "feloniously did utter, tender and publish as true a certain false, altered and counterfeited bond, the tenor of which said bond is as follows, to-wit:

"I, the undersigned, agree to stand as security for Jos. M. Leo, to the amount of his contract, twenty-two hundred dollars ($2200).

Respectfully,

(Signed) Thos. J. Callaghan."

He, the said Leo, at the time he uttered, tendered and published as true the said false, altered and counterfeited bond, well knowing the same to be false, altered and counterfeited with the felonious intent to injure and defraud, contrary to the form of the statute of the State of Louisiana in such case made and provided and against the peace and dignity of the same."

We find in the record the following demurrer: "Defendant, Jos. M. Leo, demurs to all and any evidence on the part of the State under the indictment in this case and enters this general demurrer on the following grounds:

1st—That said indictment does not charge any offense under any statute of this State.

2nd—The offering, or forging, or counterfeiting, or falsely making, or altering a bond, as well as the offense of publishing as true any such false, altered, forged or counterfeited bond, feloniously knowing the same to be false, altered, forged or counterfeited, bond, with intent to injure and defraud any person or body politic, are common law offenses, since the statute does not define what is forgery or counterfeiting.

3rd—That in charging said offense against defendant, the indictment should have conformed with the practice at common law, with the modification, however, introduced by the statutes to the effect that "it shall be sufficient to describe such instruments by any name, or designation by which the same may be usually known, or by the purport

thereof, without setting out any copy or facsimile thereof or otherwise describing the same or the value thereof."

4th—That said indictment does not conform to the common law practice, with subjoined amendment in several respects.

5th—That the indictment is defective in this, that it does not describe the instrument (charged to be forged) by any name or designation whatever, but terms it in general as "a bond," without stating in the least what sort or species of a bond, so as to apprise the accused of the nature or class of instrument or bond, which he is charged to have forged or to have uttered, tendered or published same.

6th—That the indictment is defective in this, that when it alleges the contents of said bond, by videlict, it does not recite the whole instrument, but leaves out the contract mentioned in said bond, by which said Thomas J. Callaghan is said "to stand as security for Jos. M. Leo, to the amount of his contract, twenty-two hundred dollars." That the nature of said contract, its species or kind, are not made apparent by reason of the omission to state in said indictment "any name or designation by which the said contract may be usually known, by omitting to give even the purport thereof, and without in any wise describing the same, or the value thereof."

7th—That said indictment is defective in this, that the only description or designation of the obnoxious instrument is that it is "a bond" generally, while under a videlict the security part of the contract is singled out and copied in the indictment without explaining or specifying what the contract is in *extenso,* and without copying the said contract in the indictment. That the accused is not informed of the nature, kind, or species of the contract referred to in the excerpt inserted in said indictment, and accused is entitled to be apprised of the whole contract, principal as well as accessory.

8th—That said indictment is defective in this, that it does not substantially state in what consists the alleged forgery, counterfeiting, or alteration, and does not substantially point out what part thereof is forged, counterfeited, or altered, nor what part is genuine, nor does it aver the whole of the instrument aforesaid is forged, counterfeited or altered.

Therefore defendant prays that this demurrer be sustained and that said act of indictment be quashed.

Defendant filed also a second demurrer to the indictment preferred against him. He averred:

1st—That the allegation thereof do not charge any offense known to the laws of Louisiana.

2nd—That the allegations or charges are insufficient to characterize any offense or crime denounced and punishable by the laws of Louisiana.

3rd—That the allegation "to injure and defraud" is too vague and is insufficient, there being no statement as to the party he injured and defrauded.

Wherefore defendant prays that the said indictment be quashed and the prosecutor dismissed.

These demurrers were overruled, defendant reserving a bill of exceptions. The defendant was arraigned and pleaded "not guilty," and the case went to trial. Upon the trial the district attorney offered in evidence the bond and contract referred to in the indictment, which evidence was objected to by the defendant. The court overruled the objections and the evidence was admitted, defendant reserving bills of exception. The trial resulted in a verdict of "guilty" with recommendations to the mercy of the court. Defendant moved for a new trial which the court refused. He reserved a bill of exceptions to this ruling and filed a motion in arrest of judgment which, being overruled, he, after sentence, appealed.

The first of the bills of exception referred to as having been reserved to the introduction of evidence, recites that when one Mrs. C. McCroslin, a witness in behalf of the State, after being sworn, was testifying on behalf of the State, a certain written paper of specifications of contract between defendant and the said Mrs. McCroslin, was handed to said witness for examination and identification, and after having been examined by said witness, the State then offered the said written instrument of specifications in evidence, and counsel for the defendant now makes part of this bill of exceptions the said written instrument of specifications so offered at the time, to which offer in evidence of the same counsel for the defendant then and there objected on the grounds, among others:

First—That the "so-called bond" and written specifications are not known at law, nor in common parlance as "a bond," and the same do

not fall under the operation of Louisiana Act of 1894, No. 180, afore-said (p. 223), since in them there is no stipulation whatever by builder, contractor, or undertaker, for the payment of workmen, mechanics and laborers, nor furnishers of material and supplies.

Secondly—That the terms "his contract" in the videlict inserted in the act of indictment herein is a vague and loose term, pointing to no kind, species or nature of contract, for which the said Thomas J. Callaghan assumed to stand as security; that it might apply to any sort or species of obligations whatever, well as to date, contracting parties, nature and purport of obligations, so that in that respect the instru-ment does not sufficiently put defendant on his guard and indicate what evidence he had to meet.

But said objections, as also the four objections in bill of exceptions No. 2, here reiterated and made a part hereof, as well as the various allegations of defendant's demurrers overruled by the court and made a part of the present bill of exceptions, were overruled by the court for the reasons stated at the time by the court. Counsel for defendant then and there excepted, made the said written instrument of specifica-tions a part of his objections together with the testimony of Mrs. McCroslin, which counsel now also makes part of this bill of exceptions, and now the defendant tenders this his bill of exceptions for signature and prays that the same be signed and made a part of this record."

The second bill recites that when Mrs. McCroslin was testifying as a witness for the State, a certain written paper which are specifications of a contract between the defendant and Mrs. McCroslin, was handed to the witness for examination and identification, and after having been examined by the witness the State then offered the said contract and specifications in evidence, to which evidence counsel objected on the grounds:

First—That the instrument sought to be offered and which pur-ported to be an agreement of specifications for a building to be erected by this defendant, was inadmissible in evidence inasmuch as no refer-ence had been made to nor was there any allegation in the indictment to put this defendant sufficiently upon his guard so as to know what evidence he had to meet.

Second—That the said instrument offered by the State were mere specifications, and was not a bond which was alleged to have been

forged and counterfeited; that the said instrument and specifications were separate and distinct from the so-called bond made the subject matter of the alleged uttering and publishing as true, and, furthermore, that the so-called bond as set out in the indictment does not in any way refer to the specifications then sought to be offered in evidence.

Third—That the indictment herein charges the uttering and publishing as true of a certain false, forged and counterfeited bond of twenty-two hundred dollars, without in any respect giving the name, appellation, species or kind of obligation by which any alleged contract might be ascertained or be known, nor does the said indictment give either literally or in any other way any allegation by which this defendant could be apprised of the said specifications so intended to be offered by the State on the trial hereof.

Fourth—That if the document herein set out in the indictment is intended to be a bond to secure a contract and for the security of workmen and furnishers of materials, then, and in that case, the said pretended bond as set out in the indictment is not in compliance with the act approved July 12th, 1894, and known as Act No. 180 of 1894, but said objections so urged to the admission of the specifications herein, were overruled by the court for the reasons stated by the court at the time. To which ruling of the court, counsel for the defendant then and there excepted, made the specifications a part of his objection together with the testimony of Mrs. McCroslin, which counsel also makes part of this bill of exceptions, and now this defendant tenders this bill of exceptions for signature and prays that the same be signed and made part of the record herein. The evidence objected to, but introduced, was annexed and made part of the bills as was also the testimony of Mrs. McCroslin taken down by the stenographer.

The bill of exception to the refusal of the new trial recites that the motion for a new trial which was annexed and made part of the bill having come up for trial, after argument thereon, the court for oral reasons assigned, overruled the motion, to which ruling counsel for defendant excepted, and with leave of the court made the contract of specifications, on file, part of the bill.

The motion for a new trial was based upon the following assigned grounds:

First—Because the verdict herein rendered is clearly contrary to the law and the evidence.

Second—{Because, on the trial hereof, the witnesses W. O'Brien, Joseph Woodhall, L. W. Shaw and S. W. Leo, witnesses on behalf of the defendant, testified in substance that they had worked on the building wherein this alleged bond is said to have been given, and that they had had conversations both with Mrs. McCroslin and her husband, Mr. McCroslin, and that they both had stated to the said witnesses whose names are herein given, that they never required a bond from this defendant on the building which was then being put up.

Third—Because, on the trial of this cause, the State offered in evidence, over the defendant's objection, a certain instrument in writing, purporting to be an agreement of specifications for a building to be erected by this defendant; that over defendant's objection the said specifications, although no part of the alleged indictment and having no reference thereto, was permitted to go to the jury; that by reason thereof this defendant was prejudiced by the admission of said testimony.

Fourth—That the said admitted instrument termed "specifications" was not mentioned nor set forth in said indictment, nor was there any way by which this defendant could be apprised of the intended offer of said instrument of specifications, and that the admission thereof was prejudicial to his rights.

Fifth—Because, if the alleged contract, which is made the basis of this indictment, was intended to be a contract as provided for by Act No. 180 of 1894, then and in that case the same is not drawn up, nor is it in compliance with the said act, and is null; that the said pretended, bond has never been recorded in the mortgage office in compliance with the said act heretofore recited.

Sixth—That the said document offered in evidence and described in the indictment as a bond is not known as such either in law or popular appellation, but is simply a stipulation of suretyship, vague and general in its terms, without setting forth with whom the contract was made, when made, by whom made, and what the species, kind or nature or object of the obligation was; that in order that the said surety stipulation should be valid that the principal obligation of which this was a suretyship should have been set forth, either by giving the name by which it is known in law or by giving its purport, neither of which has been done herein.

Seventh—Act No. 180 of 1894 determines and classifies as a bond only the contract of suretyship on building contracts, which is required of contractors and builders to secure the payment of all the workmen, mechanics and laborers, and all who furnish materials and supplies actually used in the building; that there is no law or statute which classifies or terms as bonds stipulations or suretyship which the contractor or builders makes and furnishes to secure the owner with whom it is made, nor is the surety stipulation made in favor of the owner himself.

Defendant moved an arrest of judgment on the ground—

First—Because the said indictment herein does not set forth the violation of any penal statute of this State.

Second—Because the indictment fails to set out any one of the known obligations as set forth in the statute which can become the subject matter of forgery.

Third—That the indictment sets out as follows: That the said defendant, Joseph M. Leo, did feloniously utter, tender and publish as true a certain false, altered and counterfeited bond, the tenor of which is as follows, to-wit:

"I, the undersigned, agree to stand as security for Joseph M. Leo, to the amount of his contract, twenty-two hundred dollars. Respectfully (Signed) Thomas J. Callaghan." That the said pretended bond, as herein set out, is not a bond in law, but is only an agreement which has never been perfected into a bond; that as the statute prescribes what species of documents shall become the subject matter of forgery, forgery cannot be committed by making an instrument in any form unless provided for by law, even though it be calculated to deceive most persons.

Fourth—Because, if the pretended bond as set forth and described in the said indictment is intended to be known as a bond relative to contracts for buildings and the security of workmen and furnishers of material, then this defendant says that the said document does not comply with, nor is it in accordance with Act 180 of 1894; that said act determines and classifies as a bond only the contract of suretyship on building contracts, which is required of contractors and builders to secure payment of workmen, mechanics and laborers and all who furnish materials and supplies actually used on the building, and that

there is no law which classifies or terms as bonds the stipulation of suretyship which the contractors or builders may make to secure the owner with whom it made the building contract, nor does the act stipulate that the surety stipulation shall be made in favor of the owner himself; that nowhere is the document, as set forth in the indictment, known in law as a bond, and is therefore not the subject matter, nor can it be the subject matter of the crime alleged against this defendant.

In view of the premises, defendant prayed that judgment herein be arrested and for general relief.

*Walter Guion,* Attorney General, and *J. Ward Gurley,* District Attorney (*Lewis Guion,* of Counsel), for Plaintiff, Appellee.

*Albert Voorhies* and *Henriques & Dunn,* for Defendant, Appellant.

The opinion of the court was delivered by

NICHOLLS, C. J.   Section 833 of the Revised Statutes, after declaring that whoever shall forge, or counterfeit, or falsely make or alter, or shall procure to be falsely made, altered, forged or counterfeited, or shall aid, or assist in falsely making, altering, forging or counterfeiting certain instruments which were specially enumerated, proceeds as follows: "Or shall alter (utter?), or publish as true any such false, altered, forged or counterfeited record, certificate, or attestation, charter, deed, will, testament, *bond,* letter of attorney, policy of insurance, bill of exchange, promissory note, acceptance, indorsement, assignment, order, acquittance, discharge, or receipt, knowing the same to be false, altered, forged or counterfeited, with intent to injure or defraud any person or body politic or corporate, on conviction shall be imprisoned by imprisonment at hard labor for not less than two nor more than fourteen years."

Section 1049 declares that in any indictment for forging, uttering * * * any instrument it shall be sufficient to describe such instrument by any name or designation, by which the same may be usually known or by the purport thereof without setting out any copy or facsimile thereof, or otherwise describing the same or the value thereof."

Defendant insists that the instrument averred to have been feloni-

ously uttered is not, on its face, a bond; that it is not sufficiently described; that extrinsic parole evidence had to be called in and used on the trial in aid of the charge made against him, touching matters and things which should have been set out in the indictment, so that he should have known, as he was entitled to have known, under the Constitution ((Article 10), the nature and cause of the accusation against him. That the evidence introduced on the trial should not have been admitted, he not having been properly apprised of the indictment as to what evidence he would have to expect against him, or be prepared to meet. That the word "bond" in a statute prohibiting the uttering of a false, altered and counterfeited bond, means a bond binding upon some obligor to some obligee, and requiring something to be done which, if not done, can be compensated by action on the bond (American & English Encyclopedia of Law, 2nd Ed., Vol. 13, page 1098. Note—State vs. Briggs, 34 Vermont, 501).

That the Supreme Court of Louisiana had held that the offense denounced as forgery, was a common law offense, because the Louisiana statute had not defined the offense, but remitted its definition to the common law jurisprudence. That, therefore, it is not sufficient for the indictment to follow the language of the statute, it must be made in distinct compliance with the common law requirements, except so far as modified by Louisiana statute. That the indictment should have shown every fact and circumstance constituting the offense, so that the accused could not be misled as to the charge he has to answer. That an indictment, describing a specific offense, by the use of general terms, without setting out also all the facts and circumstances connected therewith, if the facts alleged do not make out the offense charged, is defective. That it is not enough to charge that the defendant committed the crime of uttering a false and altered instrument, but it should be alleged how he had committed it. (State vs. Flint, 33 Ann. 1288; State vs. Styles, 5 Ann. 324. Wharton Criminal Pleadings, paragraphs 154-221.)

That when the nature, sort, or effect of the instrument does not affirmatively appear on its face, the extrinsic matter to show this must be alleged. (Bishop's New Criminal Proceedure, Vol. 2, Par. 415; Commonwealth vs. Hinds, 101 Mass. 209, 210, 211; State of Miss. vs. Wheeler, 19 Miss, 100 *et seq;* Williams vs. State, 51 Ga. 535 (1 Am.

Criml. Repts. 227); People vs. Galloway, 17 Wendel 543; People vs. Harrison, 8 Barbour 560; Cunningham vs. People, 4 Hun. (N. Y.) 455, 456, 457; State vs. Murphy, 46 La. Ann. 419, 420, 421.)

The defendant was not charged with forging or with altering an instrument of any kind. He is charged with having feloniously uttered, tendered and published as true a certain writing which is, to a certain extent at least, described in the indictment. It is therein designated as a bond. Who uttered it is immaterial. In the portion of the instrument inserted in the indictment we find that a pen had been run through the word "Andrus" and the word "and," and that letters "Jos." and the "M" are interlined; that the word "their" has been erased and the word "his" interlined. The instrument, *without the erasures and interlineations,* reads:

"I, the undersigned, agree to stand as security for Andrus and Leo to the amount of their contract.

"Twenty-two Hundred Dollars.

"$2200. 　　　　　　　　Respt.,
　　　　　　　　　　(Signed)　"THOMAS J. CALLAGHAN."

While with the alterations and interlineations it reads:

"I, the undersigned, agree to stand as security for Jos. M. Leo to the amount of his contract.

"Twenty-two Hundred Dollars.

"$2200. 　　　　　　　　Respt.,
　　　　　　　　　　(Signed)　"THOMAS J. CALLAGHAN."

So that Thomas J. Callaghan is made to appear as agreeing to stand as security for Jos. M. Leo to the amount of his contract, $2200, instead of agreeing to stand as security for Andrus and Leo to the amount of *their* contract, $2200. So much appears on the face of the indictment. It does not appear who altered it; it is declared that it had been falsely uttered. It is further declared in the indictment that the defendant uttered, tendered and published as true this false and altered instrument (designated therein as a bond), well knowing when he did so, that the same was false and altered, and that this was done with the felonious intent to injure and defraud.

The indictment shows that this instrument so altered was tendered

(uttered) by Leo to some one, though neither the person to whom it was offered, nor the circumstances under which it was uttered and tendered, are set out. The State claims that it is apparent that it was uttered and tendered to some one with whom Leo had either already made a contract or with whom he proposed to make one if he could. It contends that the altered instrument in the condition in which it appears in the indictment was well calculated to mislead, deceive and defraud any person to whom it would be tendered, falsely as an agreement on the part of Callaghan, to stand as security for Leo on his contract. That the moment Leo feloniously uttered this false and altered instrument, with the knowledge that it was such, and with the felonious intent of defrauding some person, he committed a crime under Section 833 of the Revised Statutes—no matter who the person might be to whom the instrument was presented, no matter what the character, terms or amount of the contract might be, no matter whether a contract had already been entered into or merely proposed, and no matter whether the party to whom it was presented should have in fact been injured or defrauded or not; that the legal commission of the crime was one thing, the detailed circumstances of the crime another thing; that all the State was called upon to set out in the indictment and disclose to the accused was the nature and cause of the charge against him, so that he knew what it was, leaving to him to call for detailed specifications of the charge in a bill of particulars, if he thought himself not fully informed and advised in the premises.

An examination of Section 833 of the Revised Statutes will show that the instruments under the terms of the section which it is made a crime to *utter or publish as true* if false, altered or forged or counterfeited, is for some reason made smaller than those which in the first portion of the section; it is made a crime to falsely make, utter, forge or counterfeit. That in this larger enumeration, "securities for money or property" and "bonds" are both set out, while in the smaller one "securities for money or property" are left out, but "bonds" are retained. The district attorney, with the statute before him, evidently felt it necessary to set out in the indictment the instrument which was to be averred as having been feloniously uttered, in a manner such as to make it fall by designation under some one of the instruments included in the enumeration of the statute, and for that reason he selected

the term "bond." The object of the General Assembly in enacting Section 833 is very evident, but it does not suffice in a statute (particularly in a criminal statute) that its purpose should be manifest. To be effective the purpose must find expression in the language of the law itself, as required by legal rules. We have held it permissible sometimes to restrain the generality of the terms of a law so as to exclude from its operations exceptional cases, but we are not authorized to eke out or enlarge the terms of a limited law so as to place thereunder cases which evidently should have been included therein to fully effectuate their object, but which by inadvertence or other causes were omitted. We do not think it necessary for the purposes of this case to give a definition to the word "bond." This particular statute deals with "bonds" as things other and distinct from "securities for money or property," and we should do so also. The term bond is sometimes used as a generic term, as a written instrument by which a person has become bound or committed legally, as speaking of an honest man we hear it frequently said, "his word is as good as his bond," without reference to the specific form of the evidence of the obligation. Usually the word is taken to mean a secondary or accessory securing a primary obligation in favor of some third person. The indictment does not declare that the defendant, Leo, had come under any civil obligation, written or verbal, towards any one for which Callaghan had become his surety, that Leo had not in fact made any contract or that he had tendered it to any one with the view of effecting a contract. The instrument declares: "I agree to stand security for Jos. M. Leo, to the amount of his contract. Twenty-two hundred dollars. Thomas J. Callaghan." Armed with it Leo would doubtless have been in a position to induce some one to enter into a contract with him to an amount of twenty-two hundred dollars. The instrument would, under such circumstances, notwithstanding its terms of present obligation on the part of Callaghan, be at most an offer or tender by him to become security for Leo on a contract to the extent of twenty-two hundred dollars. The instrument would not on its face nor in reality be a bond. If Leo should become liable upon a future contract, it might be said that, coupling the obligation of Callaghan evidenced by this instrument with his own, that he had furnished a bond in favor of the obligor in the contract, but until this obligation of Leo had arisen, this instrument,

(said to be Callaghan's) was merely inchoate, prospective. It was not on its face a bond. Other facts would have to arise and be connected. with it to make it constitute part of a "bond." It is true that as great a wrong and injury might be accomplished through the instrumentality of a writing of this kind, as might be accomplished by the uttering of an instrument technically and strictly falling under the designation of a *bond*, but we cannot, in matters of crime, pass from one act falling within a statute to one falling without it, no matter how alike they might be in the harmful consequences which the statute seeks to prevent. We do not think the altered instrument was technically a bond. Assuming that the facts connected with the uttering of this instrument were such as to have brought the defendant within the grasp of the provisions of the statute, these facts should have been set out in the indictment.

In State vs. Murphy, 46 Ann. 420, we quoted approvingly the following language from Wharton, p. 740:

"Where an instrument is incomplete on its face so that as it stands it cannot be the basis of any legal liability, then to make it the technical subject of forgery, the indictment must aver such facts as will invest the instrument with legal force. Thus where an indictment charged that A did feloniously and fraudulently forge a certain writing, as follows: 'Mr. Bostick, charge A's account to us.—B & C,' with intent to defraud B and C, it was held that the indictment was not valid without charging that A was indebted to Bostick, as there could be no fraud unless a debt existed."

Referring to the case before us at that time, we said:

"The indebtedness may be proved *aliunde*. To admit the proof and give legal force to the indictment it must aver such facts as will invest the instrument with legal efficacy. Where an instrument is not on its face sufficiently full to be a receipt, the defect may be supplied by showing a course of dealing between the parties in which it is understood to be and treated as such. This extrinsic matter must appear both by averment and proof. * * * Assuming the discussion that the account judged is genuine, it is not *per se* of legal efficacy against any one without additional averments in the indictment setting forth the facts connected with the transaction." (See on this subject State vs. Stephens, 45 Ann. 702.)

The indictment in the present case is for the same reason faulty and the testimony offered in support of it and which was admitted over defendant's objection should have been excluded.

For the reasons herein assigned it is hereby ordered, adjudged and decreed that the verdict of the jury and the judgment of the court therein rendered and herein appealed from be and the same are hereby set aside, annulled, avoided and reversed.

Rehearing refused.