Statement of the Case.
MONROE, C. J.
Defendant appeals from a conviction and sentence, coupled with a recommendation to the extreme mercy of the court, under an indictment which reads, in part, as follows:
“ * * * That F. L. Harper, * * * on or about the eleventh day of May in the year of Our Lord one thousand nine hundred and eighteen, * * * did willfully, knowingly, maliciously and feloniously and fraudulently, alter a certain written order in a material part, same being for an order for the payment of money, with the willful and felonious intent, then and there, to injure and defraud, contrary to the form of the statute,” etc.
He presents his case to this court upon a bill of exception from which it appears that a state witness (to wit, a foreman of a railroad company for whose use defendant, as an employé of a contractor, was cutting cross-ties) testified that he “took up” for defendant 59 ties, including 4 culls, and no more, and gave defendant a “statement” to that effect, which the witness identified; and that the state thereupon offered the statement in evidence as the instrument alleged to have been altered, to which defendant objected, on the ground that he was charged “with the alteration of an order for the payment of money,” and that the instrument so offered “did not correspond with the allegations of the indictment” and was “an entirely different document and a surprise to the defense,” which objection was overruled.
We find in the record what we take to be a copy of the document in question, reading:
May 11, 1918.
F. L. Harper has the following ties:
First-class ...........................................155-
Culls .................................................. 4
159
R. L. Armstrong, Section 4man.
The witness then, in answer to a question by the prosecuting officer, testified that the statement had been altered since he gave it to defendant, that “a 1 had been placed by the side of the 5, in the totals,” to which counsel for defendant again objected, upon the ground above ’stated, which objection was overruled, and bill reserved; that the witness was then asked whether he had, upon the same date, sent to headquarters (meaning the railroad company) a statement showing ties taken up for “Herter” (should be Harper), to which he -answered, “Yes,” and was then asked what that statement showed, to which counsel for defendant objected, on the ground that the statement so-sent would be the best evidence, and that it was made out of the presence of defendant, and, the objection having been overruled, the -witness answered, “55 first-class and 4 culls”; that thereafter the witness Brown (who appears to have been the contractor) was asked by the prosecuting officer, “Did you receive this statement” (referring to the statement first above mentioned) “from the defendant, Harper, saying 159 ties?” to which, over defendant’s objection (that “the statement was not an order for the payment of money — not the document as alleged in the indictment”), he answered in the affirmative.
The reasons assigned by the trial judge for the rulings in question are as follows:
“It is not necessary, for the purposes of a prosecution for forgery, that the order for the payment of money should be full and complete on its face. It is sufficient if it be-shown to have been such by the known accustomed dealings between the parties; and, in the present case, the evidence showed that the defendant, Har *517 per made ties and hauled them on the railroad, where the section foreman counted them and would then give Harper a statement of number of ties and also send railroad company a duplicate. Harper would present the said statement to the contractor, Brown, who would pay Harper for said ties, according to the statement as presented; it having been established a customary way of handling the business, and Brown, the tie contractor, would save all orders and present them to railway company, for settlement, and, when Brown settled with railway company, Harper’s forgery of the order was disclosed. The evidence showed that Harper forged the order or statement and collected more money than he was entitled to and would have received if he (Harper) had not forged, or altered, the order or statement, on which depended the amount of money to be paid.”
Opinion.
The points relied on by defendant are: (1) That the instrument admitted in evidence as that upon which the prosecution is based is not an order for the payment of money, and hence is not the instrument described in the indictment; and (2) that parol evidence was improperly admitted to prove the contents of the alleged duplicate statement, forwarded to “headquarters” by the section “4 man,” without the previous laying of a foundation, by showing that the instrument, itself, had been lost, destroyed, or, for some other reason, was not obtainable. R. S. 833, as amended and re-enacted by Act 67 of 1896, prescribes a penalty— making it a felony — to forge, counterfeit, or falsely make or alter certain specified instruments, including deeds, testaments, bonds, promissory notes, bills of exchange, “order, acquittance, or discharge for, or upon, the payment of money or delivery of goods, * * * any receipt for money or goods,” with intent to injure or defraud. The instrument, with the altering of which defendant is charged, is described in the indictment as an order for the payment of money, but, it not being set forth either according to its purport or tenor, it became obvious, when (for the first time) it was produced at the trial and offered in evidence; that it did not, upon its face, answer that description; and that it was at least doubtful whether it could be regarded as an instrument of any legal efficacy, or one which would expose any particular person to legal process.
The essential elements of the charge of forgery (including falsely altering with the intent to defraud) are: (1) A writing in such form as to be apparently of some legal efficacy; (2) an evil intent of the sort deemed in law fraudulent; and (3) a false making or altering of such instrument. Bishop on Or. Pro. verbo Forgery. Or, according to Dr. Wharton:
“To sustain an indictment for forgery, it is generally necessary that the instrument alleged to be forged should be one which would expose a particular person to legal process”— though apparent legal sufficiency is enough, it not being required that such suit should have in it the elements of ultimate legal success. Wharton’s Cr. Daw (9th Ed.) vol. 1, pp. 616, 617.
Whatever else may be said of the instrument in question, however, it plainly is not, upon its face, the instrument described in the indictment as an order for the payment of money, for the altering of which the statute provides the penalty sought to be enforced.
In Mr. Bishop’s work above referred to (Bish. on Cr. Pro. [3d Ed.] vol. 1, p. 47 et seq.), chapter VI bears the rubric, and reads, in part, as follows:
“Indictment to allege whatever is, in law, essential to the punishment to be inflicted.
“See. 77. Doctrine Fundamental. — The doctrine of this chapter is fundamental. Originating in natural reason and abiding in abstract justice, it has been adopted into the common law and confirmed by our written Constitutions. And it cannot be overturned, even though Constitutions should be — cannot he annulled by any changes in legal procedure — so long as any regard for individual rights remains. * * *
“Sec. 81. How Defined. — The doctrine of the courts is identical with that of reason, namely, *519 that the indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted.
“Extent and How Proved. — This doctrine pervades the entire adjudged law of criminal procedure. It is made apparent to our understandings, not by a single case only, but by all the cases. Wherever we move "in this department of our jurisprudence, we come in contact with it. We can no more escape from it than from the atmosphere which surrounds us. There would be no end to the illustrations which might be given such as,— * * *
“Sec. 84. Conclusion as to Commoiu-Law Doctrine. — It is needless to go through with the alphabet of crime in this way. The reader will find in the following pages of those volumes numerous illustrations. The result is that, in all cases, without exception, the common law requires each and every individual thing which, itself, or a statute, has. made an element in the wrong upon which the punishment is based, to be alleged in the indictment.. * * *
“Sec. 88. Nature and Cause of Accusation.— The Constitution of the United States provides, as to crimes against the general government, .that, ‘in all criminal prosecutions, the accused shall enjoy the right * * * to be informed
of the nature and cause of the accusation’; and, as we have seen, the Constitution of Minnesota contains the like clause as to crime against the state. More or less nearly in these words, are provisions in the constitutions of other states.
•“Article 10 of the Constitution of Louisiana declares that, ‘In all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him,’ ” etc.
In volume 2 of the same work (chapter xxix, p. 174), under the title “Forgery of Writings and Its Kindred Offenses,” we find the following:
“Sec. 414. Statutory Names of Instruments. —[Referring to the support clause in an indictment.] This clause is appropriate, is essential, if anywhere, and is commonly employed, in indictments on the statutes, for giving the statutory name to the forged instrument; because, in the words of Starkie, ‘it must invariably be shown, on the face of the indictment, by proper averments, that the instrument forged is the particular kind prohibited by the statute upon which the indictment is founded.’ So, the pleader says, purporting to be ‘a bill of exchange,’ a ‘bond,’ or whatever other term, correctly designating the instrument, is contained in the statute. ‘But,’ observed Buller, J., after explaining that the forms of the indictment have varied from each other at different periods of time, ‘If indictments for forgery were now merely to state that the prisoner “forged a paper writing to the tenor and effect following,” etc., and the instrument set out appeared, on the face of it, to be a bond, or bill of exchange or any other instrument described in the statute, I should, as at present advised, see no objection to such form.’ And subsequent adjudication has established this dictum in authority, namely, that the statutory name of the forged instrument need not be mentioned, where, on all the allegations, the court can see that it is one the forgery of which is, by the statute, made punishable. Still—
“Sec. 415. Correctly Named. — If the indictment undertakes to give to the instrument its statutory name, it must do this correctly. ‘For instance,’ says Archbold, ‘if a bill of exchange be described as a promissory note, the defendant will be acquitted.’ But a bank bill may be designated as a promissory note; because, in law, it is such. And—
“Averring Extrinsic Matter.■ — Where the nature, sort, or effect of the instrument does not affirmatively appear on its face, the extrinsic matter to show this must be alleged. If, for example, by usage, or in consequence of facts known to the parties, a writing, incomplete in its terms, is treated as a receipt, or an order, or, if initials are employed, instead of the full names, allegations supplying the omissions become necessary,” etc.
In the case now under consideration, the prosecuting officer relies more particularly upon the rulings of this court in the cases of State v. Maas, 37 La. Ann. 292; State v. Jefferson, 39 La. Ann. 331, 1 South. 669; State v. Wingard, 40 La. Ann. 735, 5 South. 54.
In State v. Maas, .the defendant was charged with the forgery of a check or hill of exchange, and it was held that “any fraudulent making or alteration of any of the writings set out in our statute (Rev. Stat. § 833), feloniously done with intent to defraud, constitutes the crime of forgery”; that it is not necessary to set out the particular acts that constitute the crime; that the charge that defendant forged a check or bill of exchange was not vicious for duplicity; that a check may be described in an in *521 dictment for forgery as a check or bill of exchange; that the words “order for the payment of money” (as contained in the statute) include check. The case thus referred to has therefore no bearing upon the issue now under consideration.
In State v. Jefferson, defendant was charged with having forged and altered, with intent to defraud a named person, certain orders of the following tenor:
“ ‘Willy Johns has picked 215 pounds of cotton, Henry Weastly,’ and ‘David Jefferson has picked S52 pounds of cotton. Henry Woothen.’ ”
It was held by this court that—
“The law does -not require, in cases of forgery, that the instrument charged to have been forged shall, on its face, purport to be an order for the payment of money or delivery of goods. It is sufficient that the instrument be one by the use of which, money or goods can be obtained. * * * It enters into the order of probabilities,” the opinion proceeds, “that the instruments charged to have been forged and altered were issued by some one in authority to acknowledge work done by a laborer in a manner intended to serve as a basis for the computation of what he may have earned; that an acknowledgment of that description is equivalent to an order on a disbursing agent, which, on presentation, entitles the party named, or the bearer, to payment of the realized amount, viz., so much per pound of cotton; and that the delivery of such written acknowledgment amounts to a receipt showing payment. Whether the instruments charged in this case as having been forged and uttered are such, is a question of fact for the jury to determine.”
In State v. Wingard, defendant was charged with having forged and uttered an instrument of the following tenor, to wit: “Prime Wingard 507 1 cot. T. T. P.,” with intent to defraud a named person. Defendant complained, on appeal, that the trial court had erred: (1) In holding that the instrument set forth in the indictment was such as could be forged; (2) that it was complete and could be the basis of legal- liability; (3) that, under the averments, evidence could be received explanatory of the instrument, which complaints were held to be not well founded.
“The third objection,” reads the opinion, “is that the indictment contains no allegation explanatory of the alleged forged instrument or writing, and hence evidence cannot be received to that effect. The testimony offered was indispensable to establish how the alleged forgery had been committed. Indeed, it is impossible to conceive how the jury could have concluded that the paper had or had not been forged, unless proof had been adduced to show what the paper was, and in what manner it was originally drawn up. It was unnecessary to aver in‘the indictment how the paper had been tampered with and forged.”
[1, 2] In neither of the cases to which we have thus referred do we find any allusion to the law under which the defendants were prosecuted, and which, as we have stated, provides a penalty for the forgery of specified instruments, among which are not included the instruments the alleged forgery of which constitutes the bases of those prosecutions. The indictments, as found, did not therefore charge any offense that was punishable as forgery, and could only have been framed to charge such an offense by explanatory averments to the effect that, though the instruments described did not appear to be orders for the payment of money, or the delivery of property, they were, nevertheless, intended to be used, and customarily were used, for those purposes.
That view of the matter has been taken in more recent cases. In State v. Stephen, 45 La. Ann. 702, 12 South. 883, it appears that—
The defendant, quoting from the opinion, “Having in his possession a ‘plantation ticket,’ furnished him by the overseer of the Hope Plantation, to indicate the number of days and half days he had worked upon the place, at the rate of 75 cents a day, and the amount the owner was indebted to him for the same, this indication appearing by a number of punches’ on certain lines on the ticket, made with an instrument bearing the letter ‘H.,’ the initial of the overseer, he is charged with having feloni *523 ously, falsely, and corruptly altered the ticket by adding to the number of these ‘punches,’ in order to obtain money from the owner of the plantation and to defraud him, and having presented this ticket, so altered to him, well knowing it to be falsely altered.
“These charges so plainly appear in the indictment,” the opinion continues, “that it was utterly impossible for him not to know exactly what accusation he had to meet. * * *
“We are not called upon to say whether the ticket would or would not serve as a basis for a prosecution for forgery by that special name. What we are called upon to decide, and what we do decide, is that it is sufficient under the terms of section 833 of the Revised Statutes.”
In State v. Murphy, 46 La. Ann. 415, 14 South. 920, defendant was charged with having altered a bill for $1 against the Southern Pacific Railway Company, so as to make it read:
Alex., April 16, 1893.
Woodbine Fur.
Bought of Bragg & Rial,
April 5. Repairing on bedstead........$5.00
It was held by the court (quoting from the syllabus) that—
“The statute under which the indictment was framed does not comprehend the act of altering an account independently. of, and without reference to, any receipt, or intent to use it as part of a receipt or acquittance.
“When in a case of forgery the instrument forged does not, on its face, appear to be valuable or adapted to work a fraud, extrinsic matter must be averred to enable the court to see its fraudulent tendency in matter of law.”
In the body of the opinion it is said:
“In the second place, the instrument does not sufficiently appear as being, on its face, within the meaning of the statute, and the avermentsof the indictment do not make it appear that the alleged forged instrument was one intended by and described in the statute. * * * If the incomplete instrument * * * can be made complete by averments, it cannot form the ground of a prosecution in its incomplete state. * * * The relation of debtor and creditor or the responsibility of some one to pay an amount may not appear in the writing, and yet exist. But it cannot be proved unless alleged. Upon that subject, Mr. Wharton says (page 740): ‘Where an instrument is incomplete on its face, so that as it stands it cannot be the basis of any legal liability, then, to make it the technical subject of forgery, the indictment must aver such facts as will invest the instrument with legal force.’ * * *
“Where an instrument is not on its face sufficiently full to be a receipt, the defect may be supplied by showing a course of dealing between the parties in which it is understood to be and treated as such. This extrinsic matter must appear both by averment and proof.”
And so, in State v. Leo, 108 La. 496, 32 South. 447, it was held (quoting from the syllabus) that—
“Where the alleged falsely altered instrument, with the altering of which a party stands charged in an indictment, is not full and complete on its face, but requires the introduction * * * of extrinsic facts to make it such, such extrinsic facts must be set out in the indictment.”
We therefore conclude that defendant’s objection to the admission in evidence of the “statement” charged to have been altered was improperly overruled. ■
2. We are further of opinion that the objection to the admission of parol evidence as to the contents of the alleged duplicate statement, said to have been forwarded by the section foreman to “headquarters,” without previously showing that such duplicate was lost, destroyed, or otherwise unobtainable, was also improperly overruled.
Defendant’s counsel says in his brief:
“The defense of defendant was (that) the figures were written there” (upon the statement charged to have been altered) “by Armstrong, the section foreman, when Armstrong wrote the statement. Defendant contends that the statement given him and the duplicate statement were identical and the same in figures. The state’s theory was that the duplicate showed the figures as given by witness and that it was different from the statement given the defendant. If the duplicate statement had been produced and had supported ■ the contentions of the defendant, the defendant would have been acquitted. If it supported the contentions of the state, it should have been proven by the dupli *525 cate statement itself, otherwise its loss, destruction, or impossibility of production shown.”
Neither the transcript nor the brief for the state furnishes any satisfactory answer to those contentions.
It is therefore ordered and decreed that the verdict and sentence appealed from be set aside, the indictment upon which defendant has been prosecuted quashed, and defendant discharged.
O’NIELU, J., concurs in the decree.