WILLIAM S. SHIELDS, *et al. v.* ALBERT S. WILLIAMS, COM'R., *et al.*

(*Nashville.* December Term, 1928.)

Opinion filed July 19, 1929.

**352**

P. D. Maddin, Hume, Newman & Armistead, W. P. Cooper, Bass, Berry & Sims and John K. Maddin, for complainants, appellees.

Bradley Walker, for Educational and like institutions.

L. D. Smith, Attorney-General, R. E. Maiden, Solicitor-General, M. P. O'Connor and W. E. Norvell, Jr., for defendants, appellants.

Mr. Chief Justice Green delivered the opinion of the Court.

Chapter 86 of the Acts of 1929, amended by chapter 116 of the Acts of the same year, undertook to impose a tax on the incomes of certain stocks and bonds not taxed *ad valorem*. The bill herein was filed by the owners of such securities against the fiscal officers of the State, primarily assailing the enactments as unconstitu-

tional, but, in the event they were upheld, asking for a construction of certain provisions thereof. The State officials demurred to the bill. The Chancellor was of opinion that, in passing these Acts, the Legislature exceeded the limitations thrown around the taxing power by the Constitution, and that is the principal question that has been debated before us.

Chapter 602 of the Acts of 1907 was the last general assessment law passed by the Legislature. Sections 21, 22 and 26 of that statute provided for the taxation of various corporations. The tax levied by these sections was upon the capital stock or corporate property, not on the shares of stock. Section 24 of the statute mentioned provided for the taxation of other corporations and the tax levied by this section was upon the shares of stock, not on the capital stock or corporate property.

Section 8 of the aforesaid Act contained an enumeration of personal property for assessment under numbered classes, among other classes the following:

"Class 5. The amount of income derived from United States bonds and all other stocks and bonds not taxed *ad valorem*.

"Class 6. All bonds except United States bonds and all shares of stock, except when the corporate property or capital stock is assessed in lieu of the share of stock as hereinafter provided in section 22 of this Act.

"Class 7. Notes, duebills, choses in action, accounts, mortgages, or any other evidence of indebtedness, and money on hand or on deposit, or invested in any manner in this State or elsewhere not otherwise assessed."

Chapter 86 and chapter 116 of the Acts of 1929 amend chapter 602 of the Acts of 1907 so as to omit from taxation the items specified in Class 5, Class 6, and every-

thing in Class 7 except money on hand or on deposit. The acts of 1929 also make some minor amendments in chapter 602 of the Acts of 1907 so as to make the whole of the amended legislation consistent.

Chapter 86 of the Acts of 1929 levies a tax of 5% per annum on incomes derived from stocks and bonds not taxed *ad valorem* with certain exceptions. The income from United States bonds was excepted and likewise income from stock in corporations which were arms or agencies of the United States; the income from bonds of the State of Tennessee or any political subdivision of the State, where the bonds were authorized by law to be issued tax exempt; the income on stock in corporations whose capital stock or corporate property was assessed under sections 21, 22, or 26 of chapter 602 of the Acts of 1907, or whose shares of stock were assessed under section 24 of that Act, and bonds which, under that Act, went to make up the aggregate of corporate stock or corporate property or to determine the value of the shares of stock; the income derived by educational, religious or other like institutions organized for general welfare exempt from taxation under other provisions of chapter 602 of the Acts of 1907; and (as amended by chapter 116 of the acts of 1929) the income from $1,000 of stocks and/or bonds was exempted to each taxpayer.

Section 4 of chapter 86 of the Acts of 1929 is as follows:

"Be it further enacted, that the word 'stocks' as used in this Act shall be held and construed to mean shares of stock issued by corporations chartered and organized under the laws of the State of Tennessee, or of any other State, or of the United States, or of any foreign government, and all interests in partnerships, associations, or trusts represented by transferable evidences of such in-

terest, save and except shares of stock in corporations directly formed by the United States as agencies for executing Federal powers, which stock is by law exempt from state taxation under the laws of the United States. Income from stocks as herein defined shall not be assessable to the holder thereof if the income which would otherwise be assessable has been assessed to and paid by the organization issuing the same, it being the purpose of this A(ct to impose only one income tax on assessable income. The word 'bond' shall be held and construed to include all obligations issued by any person, firm, joint stock company, business trust or corporation organized and doing business under the laws of the State of Tennessee, or any other State, evidenced by an instrument whereby the obligor is bound to pay interest to the obligee regardless of whether the obligor is doing business in the State of Tennessee, or whether the obligation under the terms of which the interest accrues is a mortgage or lien on property located in the State of Tennessee, or beyond the jurisdiction thereof; provided that the word 'bond' shall not include ordinary commercial paper, trade acceptances and rent notes, etc., maturing in six months or less from the date of issuance.''

Besides freeing them from *ad valorem* taxation, the recent legislation subjects to the income tax shares of stock in foreign corporations (and possibly some other shares) and all written interest bearing obligations to pay money, except ordinary commercial paper, trade acceptances, rent notes, etc., maturing in six months or less from date of issuance. Upon the income of such securities the income tax is levied.

The immediate inquiry is as to the power of the General Assembly to enact such legislation under the re-

straints of section 28 of Article II of the Constitution. The relevant language of that section is this:

"All property, real, personal or mixed, shall be taxed, but the legislature may except such as may be held by the state, by counties, cities or towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary or educational, and shall except one thousand dollars' worth of personal property in the hands of each taxpayer, and the direct product of the soil in the hands of the producer, and his immediate vendee. All property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that taxes shall be equal and uniform throughout the state. No one species of property from which a tax may be collected, shall be taxed higher than any other species of property of the same value, but the Legislature shall have power to tax merchants, peddlers and privileges, in such manner as they may from time to time direct. . . . The Legislature shall have power to levy a tax upon incomes derived from stocks and bonds that are not taxed *ad valorem*."

What did the framers of the Constitution have in mind when they authorized the Legislature to levy a tax "upon incomes derived from stocks and bonds that are not taxed *ad valorem?*"

As the result of the amendments to chapter 602 of the Acts of 1907, stocks and bonds of great worth are not taxed *ad valorem*. The State contends that, under express authority of the Constitution, the Legislature was entitled to levy a tax on incomes derived from such stocks and bonds.

On the other hand, the complainants contend that, in omitting such securities from *ad valorem* taxation, the Legislature transgressed the constitutional mandate that all property should be taxed and that authority for the income tax cannot be drawn from such legislative dereliction.

It is said by complainants that, in conferring this power to levy a tax upon incomes on stocks and bonds not taxed *ad valorem,* the makers of the Constitution had in view Government bonds and stocks in certain railroad corporations, the shares of which were exempted by charter provisions from taxation. In other words, stocks and bonds which could not be taxed *ad valorem.*

We are not able to agree to the latter proposition. The Journal of the Constitutional Convention shows that, as first reported to that body by the committee on finance, etc., section 28 contained this provision:

"The Legislature shall have power to levy a special tax upon incomes derived from stocks and bonds exempted by the laws of the United States from taxation."

An alternative proposal was offered containing this language:

"The Legislature shall levy a special tax upon incomes derived from stocks and bonds exempted by the laws of the United States from taxation."

Thereafter the Convention substituted for the clauses offered the clause embodied in section 28:

"The Legislature shall have power to levy a tax upon incomes derived from stocks and bonds that are not taxed *ad valorem.*"

It is suggested by counsel for the complainants that members of the Convention were aware of provisions in the charters of said railroad corporations created by

legislative Acts which exempted the shares of stock in said corporations from *ad valorem* taxation and that the income tax clause was finally framed so as to authorize a tax upon the dividends of such shares of stock as well as upon the interest derived from United States bonds.

With deference to learned counsel, this argument imputes to the wise men and able lawyers composing the Constitutional Convention of 1870 improvidence and ignorance which, in our opinion, cannot be justly ascribed to these historic characters.

As pointed out in *Mosely* v. *State,* 115 Tenn., 52, it was decided by the Supreme Court of the United States in 1829, *Weston* v. *City of Charleston,* 2nd Peters, 449, 7 L. Ed., 481, that a state or municipality was without power to levy a tax upon the interest derived from Government bonds.

Can we be asked to believe that the many learned jurists included in the Convention of 1870 were all unaware or unmindful of this notable decision made forty years earlier?

And again, in that portion of their bill herein seeking a construction of chapter 86 and chapter 116 of the Acts of 1929, in the event these statutes are held valid, complainants say:

"Some of the complainants are stockholders of the Nashville and Decatur Railroad and the Nashville, Chattanooga & St. Louis Railway, whose corporate charters were granted prior to the year 1870, and contain provisions which legally exempt the shares of stock in the hands of the stockholders from taxation forever. These charter exemptions from taxation are valid and binding contracts, protected by the Constitution of the United States from impairment, and any attempt on the.

part of the Commissioner of Finance and Taxation to levy and collect an income tax on the dividends received by the stockholders of such corporate stocks will be a tax on the stocks themselves, and in violation of the provision of the Constitution of the United States which provides: 'No state shall pass any law impairing the obligation of any contract.' "

The brief for the State officials likewise declares "it is clear that the income . . . from securities protected by the contract clause of the Federal Constitution cannot be taxed."

If the proposition contained in these quotations is not true, it is still so obvious and so plausible it could scarcely have escaped the consideration of the lawyers in the Constitutional Convention, and we cannot believe that discerning body contemplated conferring on the Legislature especial power to levy on stocks an income tax of such doubtful validity. Particularly is this unlikely since the charter exempt stocks were so few and returns from such a tax would have been so inconsequential.

To construe the income tax clause according to complainants' contention is to convict the makers of our Constitution of inserting in that solemn document a futile provision which they must have known was vain. We are unable to entertain such an idea.

The clause, in our opinion, was not designed to authorize an attempt to tax incomes from stocks and bonds not taxable but to authorize a tax upon incomes derived from stocks and bonds that were (lawfully) not taxed *ad valorem.*

Counsel for complainants insist that their construction of the income tax clause of section 28 is supported

360

by the opinion of the profession long entertained and by contemporary and subsequent legislative interpretation. The views of the Legislature and of the profession on a matter of this character are, of course, entitled to much deference but our judgment cannot be so controlled. It is sufficient to say, so far as this court is concerned, as appears from *Mosely* v. *State, supra,* the first time the matter came up, it was pointed out that the income on United States bonds was not subject to taxation by the State. Neither the court nor counsel for the State so far as the opinion shows had any thought that the income tax clause of section 28 authorized such taxation. The clause was not referred to.

We agree that the Legislature, by a contumacious failure or refusal to levy a tax on property, taxation of which the Constitution required, could not bring that property into the class of property not taxed *ad valorem* and then subject such property to income tax.

Section 28 ordains that all property be taxed and enjoins uniformity and equality in taxation but it does not exact double taxation.

It has been settled for years that the capital stock of a corporation and its shares of stock were separate and distinct things and that both might be taxed. This was so held, although the shareholder, as the ultimate owner of the corporate assets, in final analysis, bore the burden of both taxes. *Union Bank* v. *State,* 17 Tenn. (9 Yerg.), 490; *Memphis* v. *Ensley,* 65 Tenn. (6 Bax.), 533; *Street Railroad Company* v. *Morrow,* 87 Tenn., 406; *Memphis* v. *Bank,* 91 Tenn., 546; *Memphis* v. *Insurance Company,* 91 Tenn., 561; *Memphis* v. *Bank,* 91 Tenn., 578; *State* v. *Bank,* 95 Tenn., 221; *State* v. *In-*

*surance Company,* 97 Tenn., 85; *Bank* v. *Memphis,* 101 Tenn., 154.

So it has been decided that the land and the mortgagee's interest are separate and distinct properties, and that the land might be taxed in the hands of the mortgagor and the mortgagee might be taxed on his notes and the mortgage he held to secure them. *Dunn* v. *Dunn,* 99 Tenn., 598.

And the purchaser of property on credit may be taxed to the full value of the property and the seller may be taxed to the same amount on his debt. *Street Railroad Company* v. *Morrow, supra.*

Such taxation, while sustained and declared not to be double taxation in the sense that it exceeded constitutional restrictions, has more than once been deprecated by this court and by the Supreme Court of the United States. Discussing such taxation in *Street Railroad Company* v. *Morrow, supra,* this court said:

"To illustrate, political economists are generally agreed that the greater part of a tax assessed against a landlord falls finally upon his tenant. So a tax upon mortgages upon land in the end proves to be a tax upon the borrower. In neither of these cases was it intended or desired that the burden of the tax should fall upon either the renter or borrower. Yet, although it may happen that the renter and the borrower have in other forms fully paid their due proportion of taxation, the unintended duplication of their burden will not make the tax which they have indirectly been compelled to pay double taxation. So there seems to be double taxation of the same property to two individuals where the purchaser of property on credit is taxed to its full value, while the seller is taxed to the same amount on the debt."

In *Tennessee* v. *Whitworth*, 117 U. S., 129, 29 L. Ed., 830, the Supreme Court of the United States said:

"In corporations four elements of taxable value are sometimes found: 1, franchises; 2, capital stock in the hands of the corporation; 3, corporate property; and 4, shares of the capital stock in the hands of the individual stockholders. Each of these is, under some circumstances, an appropriate subject of taxation; and it is no doubt within the power of a State, when not restrained by constitutional limitations, to assess taxes upon them in a way to subject the corporation or the stockholders to double taxation. Double taxation is, however, never to be presumed. Justice requires that the burdens of government shall as far as is practicable be laid equally on all; and if property is taxed once in one way, it would ordinarily be wrong to tax it again in another way, when the burden of both taxes falls on the same person. Sometimes tax laws have that effect, but if they do it is because the Legislature has unmistakably so enacted. All presumptions are against such an imposition."

Notwithstanding our Constitution requires that "all property, real, personal or mixed, shall be taxed" and notwithstanding it has been held for years that the capital stock of a corporation and the shares of stock of a corporation were distinct items of property, it has likewise been held for years that the Constitution did not require the assessment of both capital stock and shares of stock.

In *Carroll* v. *Alsup*, 107 Tenn., 258, it was laid down that a provision in a general assessment law did not create an unlawful exemption but only prescribed a peculiar but valid method of assessment which directed that the corporate property of certain corporations

should be assessed at actual cash value and that this should be in lieu of any assessment of shares of stock either to the corporation or to its stockholders.

In *Fertilizer Company* v. *McFall*, 128 Tenn., 645, it was declared:

"It is within the power of the Legislature to assess corporations upon their corporate property and capital stock excluding the shares of stock, or it is within the power of the Legislature to assess shares of stock in lieu of corporate property and capital stock. The latter method of assessment was adopted in section 24 of the act of 1907, respecting banking associations and other corporations therein named. Either mode of assessment is valid, and neither can be regarded as unlawfully exempting corporate property from taxation. The two plans are merely different methods of assessment of corporate property. *Bank* v. *Memphis*, 101 Tenn., 154, 46 S. W., 557; *Carroll* v. *Alsup*, 107 Tenn., 257, 64 S. W., 193."

These cases were followed and approved in *Sloan* v. *City of Columbia*, 144 Tenn., 197, the latter case, perhaps, going a little further.

The principle of these cases seems ample warrant for the legislative repeal of taxes hitherto levied on the instruments described as bonds in chapter 86 of the Acts of 1929. Such instruments merely call for money. They have no intrinsic value. The money upon which such bonds are based is assessed under other provisions of chapter 602 of the Acts of 1907. The substance does not escape, only the symbol is freed.

The owner of a bond is entitled, besides interest, to receive the money called for when his bond matures. Meanwhile, the money coming to him is being taxed.

The owner of a share of stock in a corporation whose corporate property is assessed is entitled, besides dividends, to his part of the corporate property when the corporation is wound up. Meanwhile, the corporate property coming to him is being taxed.

The essence of the corporation tax cases cited is that taxation of the basic property justifies release from taxation of the ultimate right to receive such property. The repeal of the *ad valorem* tax on properties described as bonds by chapter 86 of the Acts of 1929 may be securely rested on the doctrine implicit in these cases, as well as the release from *ad valorem* taxation of stock in corporations located and taxed elsewhere. This is about all the repeal of Class 6 of subsection 8, chapter 602, Acts of 1907, accomplishes so far as stocks are concerned.

The conclusion reached is not without support of authority. The Constitution of the State of Washington provided for a uniform and equal rate of assessment of all property in that State according to its value in money and the Legislature of that State passed an Act excepting from taxation mortgages, notes, accounts, money, certificates of deposit and other choses in action. Concerning the validity of these exceptions, the court said:

"The constitutional requirement that all property shall be taxed is certainly satisfied through a method by which the total of all wealth in the State is once taxed. *Double taxation should be avoided as far as possible, and, in any event, the Constitution should not be so construed as to require it.*

. . . .

"So far as credits are concerned, if it is demonstrable that the total wealth of the state can be once taxed without the taxation of credits in any form, we think the Con-

stitution is satisfied without the taxation of credits. The multiplicity of credits does not add to the property wealth of the state. If A buys of B a piece of real estate, and agrees, by promissory note or otherwise, to pay $5,000 therefor, there is, as a result in the hands of B a credit in the amount of $5,000; but there is not thereby created $5,000 more property or wealth. By the transaction the land has passed from B into' the possession and control of A, and is taxable the same as if it had remained with B. The credit in the hands of B is a matter of no value or consequence except for the prospect or faith that A will, in the future, deliver to B $5,000 in actual money or other property. That money or property that may in the future come to B is still in the hands of A, or someone else from whom A will procure it, and it is meanwhile taxable at some place, wherever it may be, no matter who possesses it or controls it, whether within or without this state. The credit in the hands of B is simply the right to demand the delivery of $5,000 worth of property at some time in the future. To tax this right and the property which it represents is clearly double taxation. A similar illustration applies to a loan of money.'' *State ex rel.* v. *Parmenter,* 50 Wash., 164, 19 L. R. A. (N. S.), 707.

In *State ex rel.* v. *American Trust Co.,* 141 Tenn., 243, it was held that a tax on mortgages of 15c on each $100 in lieu of all other taxes was invalid. Reference to that case will disclose that it was conceded by attorneys for the State that the tax could not be sustained as a property tax in Tennessee. This involved the assumption that mortgages must be assessed as other property and therefore uniformly with other property. The court accordingly held that an excise tax could not be laid in lieu of an *ad valorem* tax on property subject to *ad valorem*

taxation. It was assumed in that case, following the concession of counsel, that a mortgage or the debt secured by a mortgage must be taxed and that question was not examined.

There is much conflict in the decisions as to whether an income tax is a property tax on an excise tax. 26 R. C. L., 146, Cooley on Taxation (4 Ed.), sec. 1743. It is generally important to determine this question in order to ascertain whether such a tax is subject to the regulation of the equality and uniformity provisions contained in the Constitutions of many States.

■ We see no necessity of an inquiry as to the nature of the income tax authorized by the Tennessee Constitution. Section 28 of Article II of our Constitution, *ex vi termini,* excludes the income tax from the scope of the equality and uniformity clause. The language is that "all property shall be taxed according to its value (*ad valorem*) . . . so that taxes shall be equal and uniform throughout the State." The requirement for equality and uniformity applies to taxes on property taxed according to its value or *ad valorem.* Such requirement is not imposed with respect to privilege taxes authorized in the next clause, nor is such requirement imposed in the following clause on the authorized "tax on incomes derived from stocks and bonds not taxed *ad valorem.*" Both the privilege tax clause and the income tax laws are special provisions, exceptions to the *ad valorem* tax clause, clear of the restrictions contained in the *ad valorem* tax clause.

If the income tax sanctioned by section 28 of Article II be a property tax, it only reaches property not within the purview of the equality and uniformity clause, that is property not taxed according to value. The only equal-

ity and uniformity therefore required in this limited income taxation is such equality and uniformity as is demanded in all legislation by section 8 of Article I and section 8 of Article XI of the Tennessee Constitution and 14th Amendment to the Federal Constitution. That is to say, a reasonable classification of incomes to be taxed is permissible.

The exemption of the income from so many stocks is readily justified by reason of the provisions of the corporation excise tax, chapter 21, Acts of 1923, and the corporate privilege taxes noted in that statute. Stockholders ultimately bear these taxes. Bondowners are not so burdened.

The exemption of the incomes of religious, educational and similar institutions is likewise reasonable under familiar principles. These institutions are doing work that would otherwise fall upon the State.

The only debatable classification arises from the proviso contained in section 4 of chapter 86 of the Acts of 1929, which excludes from the obligations described as bonds in that section ''ordinary commercial paper, trade acceptances and rent notes, etc., maturing in six months or less from the date of issuance.''

It is suggested by counsel for the State that rent notes do not bear interest and would not have fallen within the description of bonds and that the proviso is superfluous as to rent notes. However this may be, we still have before us the propriety of a legislative classification for purposes of taxation which burdens the income from long term loans and relieves the income from short term loans.

We think such classification is permissible. Short term loans are employed in merchandising, manufacturing and trade. Such business activities produce wealth and create

new taxable values. On the other hand, the proceeds of long term loans are used ordinarily for investment, to acquire property, not to produce property, not to create new taxable values.

This consideration seems to justify a distinction in the matter of the taxation of the two classes of securities. A line of separation must be drawn somewhere and a six months maturity appears to be a suitable boundary. It is to be remembered that in revenue measures the Legislature has a wide range of discretion and that the courts will not interfere if any good reason can be·conceived to justify a classification. *Ogilvie* v. *Hailey,* 141 Tenn., 392; *Caldwell & Company* v. *Lea,* 152 Tenn., 48; *Darnell* v. *Shapard,* 156 Tenn., 544.

The complainants insist that chapter 86 of the Acts of 1929 contains two subjects and that the body of the Act is broader than the caption—that the caption does not fairly indicate the scope of the Act. The caption is in these words:

"A BILL to be entitled, 'An act to provide revenue for the state of Tennessee by levying and collecting a tax upon incomes derived from certain stocks and bonds that are not taxed *ad valorem,* and to amend Chapter 602 of Public Acts of 1907 entitled "An act to provide more just and equitable laws for the assessment and collection of revenue for state, county and municipal purposes" known as a General Assessment Act; and to provide penalties for violations of this act.' "

We have heretofore set out the substance of the body of the Act.

We find no merit in the contention that the Act contains two subjects.

In *Bell* v. *Hart,* 143 Tenn., 587, it is said:

"The two-subject clause of the Constitution was intended to prevent a combination in the same acts of laws upon wholly different subjects; to avoid the union of incongruous matters in one statute; to secure unity of purpose in legislative enactments. *State* v. *Lasater*, 68 Tenn. (9 Bax.), 594; *State ex rel. Morrell* v. *Pickle*, 71 Tenn. (3 Lea), 79; *Garvin* v. *State*, 81 Tenn. (13 Lea), 162; *Powers* v. *McKenzie*, 90 Tenn., 178, 16 S. W., 559; *State* v. *Brown*, 103 Tenn., 449, 53 S. W., 727; *Railroad* v. *Byrne*, 119 Tenn., 278, 104 S. W., 460; *Kizer* v. *State*, 140 Tenn., 582, 205 S. W., 423."

The purpose of chapter 86 of the Acts of 1929 was to provide revenue by a new scheme of taxation and to that end to amend an earlier revenue Act. There is no incongruity in so much of the later Act as amends the earlier. On the contrary, the amendments of the former Act are entirely consistent and germane to the purposes of the later Act. In fact, the amendments are so clearly ancillary to the purposes of the later Act they could doubtless have been inserted therein without mention in the caption of such amendments. Lewis' Sutherland Statutory Construction, sec. 130.

A more serious question is presented upon the contention that under a caption indicating legislation levying a tax upon incomes derived from certain stocks and bonds, it was not permissible to levy a tax upon incomes derived on all the interest bearing obligations described as bonds in the body of the Act.

The determinative inquiry is, of course, as to the meaning of *bonds*—what that word may be said to fairly comprehend.

We think the caption can scarcely be called receptive. It foreshadows a tax upon *certain bonds* and puts all

interested upon notice that all bonds are not affected and suggests an investigation.

 When tested by constitutional provisions such as section 17 of Article II of our Constitution, just as when tested by other constitutional provisions, every doubt is to be resolved in favor of the validity of an Act of the Legislature. The rule is well settled that:

"If the words in a title, taken in any sense or meaning which they will bear, are sufficient to cover the provisions of the Act, the Act will be sustained though the meaning so given the words may not be the most obvious or common." Lewis' Sutherland Statutory Construction, sec. 127, citing *Muel* v. *People,* 198 Ill., 258; *In re Pinckney,* 47 Kan., 89; *Stewart* v. *Thomas,* 64 Kan., 511; *State* v. *Northampton Twp.,* 52 N. J. L., 496.

 A banker would, of course, not refer to many of the various choses in action as bonds which are included in that term by the statutory definition before us. Nevertheless, we know that, after the use of private seals was abolished, written obligations of various kinds came to be commonly known as bonds. The word was doubtless used according to its common acceptation in section 28 of Article II of the Constitution, and the legislative use of the word in chapter 86 of the Acts of 1929 is justified by many authorities.

A bond is what binds. Therefore any instrument in writing that legally binds a party to do a certain thing may be called a bond. *Courand* v. *Vollmer,* 31 Tex., 387, 401.

The term bond is sometimes used as a generic term— as a written instrument by which a person has become bound or committed legally. *State* v. *Leo,* 108 La., 496.

The term bond, in its ordinary, popular signification, includes an instrument, not under seal, by which the maker binds himself to pay money or do some act specified, as well as instruments for like purposes under seal. *Lane* v. *Inhabitants of Town of Embden*, 72 Me., 354, 364.

The word bond does not, *ex vi termini*, imply a contract under seal, but, as used in popular language, imports the substantive action expressed by the verb "to bind," and, if one is bound, he is in bonds or under bonds; and the word implies nothing more than a binding contract, in whatever form, and though, in legal phraseology, the term usually denotes a specialty, it does not necessarily imply a contract under seal. *Ide* v. *Passumpsic & C. R. R. Co.*, 32 Vt., 297, 299.

"But in popular language, any instrument in writing that legally binds a party to do a certain thing, may be called a bond." 9 C. J., 7.

So, while the word bond used in the caption of chapter 86 of the Acts of 1929, in its most accurate or obvious sense, may not point to all the obligations taxed in the statute, still in a sense fully sanctioned by judicial approval it does include such obligations. The body of the Act is therefore not broader than its caption.

Other constitutional objections to chapter 86 and chapter 116 of the Acts of 1929 are suggested, all of which we have considered. They were not pressed, however, in argument and are not well made and do not seem to require discussion.

Construing the Acts before us, we are of opinion:

1. That it was not the intention of the Legislature to impose a tax upon the income derived from stock in corporations assessed by the Railroad and Public Utili-

ties Commission according to the provisions of chapter 3 of the Acts of 1919. It is true that chapter 86 of the Acts of 1929 does not, in as many words, except from taxation the income on shares of stock of such corporations but the manifest purpose of the statute is to except from its burden the income on stock in all corporations reached for *ad valorem* taxation by the State of Tennessee in any of the prescribed methods. In excepting from income taxation shares of stock in corporations reached under stated provisions of chapter 602 of the Acts of 1907, the Legislature was referring to these sections of the Act of 1907 as descriptive of methods of corporate taxation in Tennessee. The reference was not by way of enumeration of corporations, income from the shares of which alone was to be free from taxation.

2. As to the income arising from shares of stock in corporations containing charter provisions exempting such shares from taxation, the State has conceded that such income was not intended to be taxed by the recent legislation, and it is so adjudged.

With the declarations just made, and for the reasons stated, the decree of the Chancellor is reversed and the bill dismissed.