DONATHAN *et al. v.* McMINN COUNTY *et al.*

(*Knoxville,* September Term 1947, May Session, 1948.)

Opinion filed July 17, 1948.

CHAS. C. GUINN, of Etowah, and R. ARNOLD KRAMER, ERMA G. GREENWOOD and R. R. KRAMER, all of Knoxville, for appellants.

DUGGAN & WASHINGTON, of Athens, for appellees.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Complainants below, as taxpayers of McMinn County, allege in their bill that Chapter 346 of the Private Acts of 1947, applicable alone to McMinn County, is unconstitutional for each of several reasons. The Chancellor, after a hearing on the bill and sworn answer of defendants, councilmen and other officials of McMinn County, dismissed the bill, being of the opinion that the act did not violate the Constitution in the particulars alleged, or that as to certain sections of the act the complainants were not entitled to an adjudication, since they were not shown to be adversely affected by those sections.

Complainants have appealed and make the insistences hereafter stated. These insistences have been thoroughly briefed on all sides.

The purpose of the act is stated in its very voluminous caption as follows:

"An Act to reorganize the Government and Administrator of McMinn County by creating and establishing a County Council for said County; . . . by divesting the Quarterly County Court of McMinn County and the Chairman thereof of certain statutory powers and duties and by vesting these and various other powers and duties in the Council . . ."

The same purpose in a much more condensed form was stated in the caption and enacted in the body of the Private Acts applicable to Shelby, Knox and Polk Counties, respectively. Those acts were adjudged by this Court to be valid enactments in the cases of *Prescott* v. *Duncan*, 126 Tenn. 106, 148 S. W. 229 (Priv. Acts 1911, c. 237); *Troutman* v. *Crippen*, 186 Tenn. 459, 212 S. W. 2d 33 (Chapter 183, Private Acts of 1937), and *Crewse* v. *Beeler*, 186 Tenn. 475, 212 S. W. 2d 39 (Chapter 367, Private Acts of 1947). It is said by the appellants that those decisions are not applicable here because additional powers sought to be transferred by the McMinn County Act to the county council renders that act invalid.

This act creates a county council of nine members for McMinn County to whom is transferred from the County Quarterly Court all of its powers except those given it by the Constitution. These council members are to receive substantial salaries. Therefore, these complainants as taxpayers have the right to attack the constitutionality of the act, as a whole, since it imposes a burden of taxation upon them not common to citizens who

pay no taxes. *Reams* v. *Board of Mayor and Aldermen*, 155 Tenn. 222, 225, 291 S. W. 1067.

Further, if these complainant taxpayers are not shown to be adversely affected by a particular provision of the act they are not entitled to attack the constitutionality of that particular provision unless the invalidity of that provision renders the entire act invalid. *Hyde* v. *State*, 131 Tenn. 208, 215, 174 S. W. 1127; *Troutman* v. *Crippen, supra.*

Section 1 of this act provides that this McMinn County Council "is authorized and empowered to administer, direct and control all those activities, affairs, departments, functions and offices of McMinn County that are not expressly vested by the Constitution of the State of Tennessee *or by general law of this State which is not subject to modification by a Private Act,* . . . All policy-making and administrative powers and functions and duties of the County government are hereby vested in the Council; *except those expressly reserved in the State Constitution or in controlling general law to another agency.*" Based upon that language which we have italicized in this question, and which appears in other sections of the act, it is insisted that there is no criteria by which to determine the extent of the powers of the County Council and, therefore, the act is so vague and indefinite that it violates the due process clause (Article I, Section 8) of our State Constitution, and of our Federal Constitution, (14th amendment). *Samuelson* v. *State*, 116 Tenn. 470, 492, 493, 95 S. W. 1012, 115 Am. St. Rep. 805.

Other than in *Samuelson* v. *State, supra*, as to the unconstitutionality of a vague and indefinite statute, we find no analogous precedent in our own decisions for

guidance here. However, in the Minnesota case of *State* v. *Lanesboro Produce & Hatchery Co.*, 221 Minn. 246, 21 N. W. 2d 792, 795, 163 A. L. R. 1108, it is held that the uncertainty in a statute which will amount to a denial of due process of law "is not the difficulty of ascertaining whether close cases fall within or without the prohibition of a statute, but whether the standard established by the statute is so uncertain that it cannot be determined with reasonable definiteness that any particular act is disapproved."

In the Minnesota case of *State* v. *Northwest Poultry & Egg Co.*, 203 Minn. 438, 281 N. W. 753; two members of that Court are quoted in 163 A. L. R. 1112 as stating what seems to us to be a sound and applicable principle, to-wit: "That is not uncertain or vague which by the orderly processes of litigation can be rendered sufficiently definite and certain for purposes of judicial decision". Certainly, a judicial decision could be rendered upon any issue which might be made by a disagreement as to whether a particular power sought to be exercised by the McMinn County Council under this act is one controlled by a general law that cannot be modified by a private act.

██ ██ For another reason, we think the same result follows. This act takes up forty-four pages of the published volume of the Private Acts of Tennessee for 1947. The unusual length of this document is largely due to the specification in laborious detail of the specific duties and powers of the County Council, its manager and other officers or employees. Two well settled principles of law assert themselves here. One is

"Whenever an act is susceptible of two constructions, one of which may render the act valid and the other invalid, the courts adopt the construction that will render

the act valid." *Soukup* v. *Sell*, 171 Tenn. 437, 441, 442, 104 S. W. 2d 830, 831.

The other is:

"The legislative intent will prevail over the strict letter or literal sense of the language used, and, in order to carry into effect this intent, general terms will be limited, and those that are narrow expanded." *Farmer* v. *Wiseman et al.*, 177 Tenn. 578-582, 151 S. W. 2d 1085, 1086, 135 A. L. R. 1169.

We think that within the spirit of the two rules just stated, the broad general language used in this act must be read in connection with and referable to and limited by the specific duties and powers enumerated by the act in such minute detail. Appellants' insistence upon this point must, therefore, be rejected.

It is also insisted that the act violates Article XI, Section 8 of the Constitution in that in various particulars now to be considered the general law applicable to all other counties of the State is suspended as to McMinn County.

In so far as the act creates a county council and transfers from the Quarterly Court and its chairman to this council all duties and powers connected with the administrative and executive governmental affairs of McMinn County, except those duties and powers conferred upon the Quarterly Court by the Constitution, this question is foreclosed adverse to the contentions of these appellants by the decision of this Court in *Prescott* v. *Duncan; Troutman* v. *Crippen; Crewse* v. *Beeler, supra.*

It is asserted, however, that the general law is by the act suspended contrary to the prohibition of Article XI, Section 8 in that by Section 4 of the act McMinn County is required to pay for corporate surety

bonds of the members of the council; and by Section 13 the council is authorized to appropriate funds for emergencies brought about by some catastrophe; and by Section 24 it is provided that advertisement shall be had. and bids received for any contract involving obligations in excess of $500.00. There is no general law prohibiting the doing of any of these acts. Each affects McMinn County in its governmental capacity. A special act not contrary to the provisions of a general law and affecting a county in its governmental capacity may legally be enacted. *Darnell* v. *Shapard*, 156 Tenn. 544, 3 S. W. 2d 661; *Town of McMinnville* v. *Curtis*, 183 Tenn. 442, 448, 192 S. W. 2d 998; *Knox Tenn Theatres v. Dance*, 186 Tenn. 114, 208 S. W. (2d) 536, 541.

The remaining particular provisions of the act which the appellants insist operate to suspend the general law are these:—(1) Section 6 gives the council "authority and power" to supervise "the methods used and the work done by the County Tax Assessor in assessing property for taxation and that done by the County Board of Equalization in passing upon and equalizing the assessments made". By Section 12, subd. (a) a manager elected by and holding his position at the will of the council is made responsible to the council "for supervising and directing" the assessment "of all property for purposes of taxation, the preparation of the property tax books", and by Section 14 the director of the department of finance is made responsible to the manager "for supervising as fully as may be possible under existing general law the methods used and the work done by the County Tax Assessor in assessing property for taxation, and by the County Board of Equalization in passing upon and equalizing the assessments

made''; (2) Section 7(h) provides that the council "may allow discounts'' for payment of taxes before they fall due, excluding, however, any discount as to the State's portion of such tax; (3) Section 7(i) gives the council "authority to employ a County Attorney" and by Section 9 the manager "shall . . . select the department heads and all other employees in the administrative services of the County Government, except as otherwise provided in this Act or in the Constitution of the State of Tennessee". Section 14 provides that the Director of Finance "shall be charged with the keeping of . . . books necessary to adequate accounting records'' and requires elected officials or other county employees to keep the books requisite to their respective offices "in compliance with the procedures, forms and directions prescribed by the Director of Finance" and make reports to him as to funds handled "at such intervals as the Director of Finance may require''; (4) Section 22 provides that the "Council is hereby empowered to adopt and enforce ordinances and resolutions" with reference to many matters then specified, and thereafter it is further provided that the violation of such ordinances or resolutions "shall constitute a misdemeanor"; (5) Section 23 prohibits any member of the council or officer or employee of the county government from being directly or indirectly interested in any purchase made by or contract with the county government, and certain penalties are provided.

Exclusive of one provision in Section 22, subd. c to be hereafter considered, one or the other of two situations obtains as to each of the immediately above stated provisions of the act, to-wit: (1) either the council has not attempted to exercise the authority purported to be

given it, or (2) the appellants are not adversely affected thereby. So, subject to the exception hereafter considered, a decision at this time as to the constitutionality of those objected to provisions of the act which come within the first situation above specified would be premature. The council may never attempt to exercise the authority purported to be given by those provisions. The general rule, nothing else intervening, is that the Court will "not . . . determine contingencies which may or may not ever arise". *United States Fidelity & Guar. Co.* v. *Askew,* 183 Tenn. 209, 191 S. W. 2d 533, 535; *White* v. *Kelton,* 144 Tenn. 327, 232 S. W. 668. Subject to the same above mentioned exception, hereafter considered, the constitutionality of those above stated objected to provisions of the act which come within the second situation cannot, consistent with the general rule, be determined in this case, since it does not appear that the appellants are in any way affected by those provisions of the act and are not, therefore, in a position to question their validity. *Hyde* v. *State; Troutman* v. *Crippen, supra; Rushing* v. *Tennessee Crime Commission,* 173 Tenn. 308, 117 S. W. 2d 4.

Referring now to the exception just above twice mentioned, if any one or more of the above stated objected to provisions of the act should be unconstitutional, and that provision is such that it invalidates the whole act, then these appellants are at this time adversely affected, as taxpayers, being burdened with a proportion of the expense of paying the substantial salaries of the members of the council and other provided for expenses purportedly established by what would then amount to an unconstitutional act. In that event the adjudication in this case of whether the objected to provisions are

constitutional, or the reverse, would not be premature. It follows that if any of these provisions cannot be elided from the act in the event of invalidity, then this Court must in this case determine the constitutionality of those particular provisions which cannot be elided by reason of the severability clause. Consideration of the question of elision can, however, more appropriately be hereafter determined.

Among other directions, it is provided by Section 22, subd. c of the act "That the Council is hereby empowered to adopt and enforce ordinances and resolutions prescribing detailed procedure to be employed in . . . The collecting, safeguarding, depositing, expending and reporting of . . . all trust, guardianship and administratorship funds". It is recited by the title that this is "An Act to reorganize the Government and Administration of McMinn County". The provision in question has nothing to do with the government and administration of McMinn County, and nowhere in the caption is it indicated that it will be attempted in the body of the act to authorize an encroachment by this executive and administrative board upon an exclusively judicial function with reference to the property and rights of individuals, jurisdiction of which in these matters is vested in the courts by the general law carried in many sections of the code. Aside from other constitutionally objectionable features, if this provision should be given effect, it would arbitrarily suspend the general law. We sustain appellants' insistence that this provision offends Article II, Section 17 and Article XI, Section 8 of our Constitution.

It is further insisted that the general law is suspended with reference to certain provisions which

purport to deal with the schools and school funds. Section 14 provides that the director of finance *shall* (not in his discretion) issue the disbursement warrants of the county school funds in accordance with the adopted budget. By Section 17 the county director of highways and public works is made responsible for the operation of the school buses and for the supervision of the buses and in employing and discharging drivers; before the county board of education may establish any additional transportation routes it must secure from that director a written statement that the condition of the roads are such that the establishment and use of the additional transportation "is feasible". The written approval of the department of highways and public works must be had for maintenance, repair, servicing, etc. of these buses.

Under the general law carried in the Code commencing with section 2317 the county board of education and the county school superintendent of the counties of the State are vested with certain authority and do have imposed upon them the performance of certain duties, among them being the issuance of warrants on school funds, code section 2324(5); to employ janitors, engineers and such other persons "as may be necessary to care for the school property, and to fix their compensation" and "To purchase all supplies" and "To order warrants drawn on the county trustee on account of the elementary and the high school funds, respectively", code section 2325-(5), (6) and (7); "To provide transportation for pupils . . . and to pay for the same", and "To purchase equipment and employ a driver, or to contract with persons owning equipment, for transporting pupils to and from school" in accordance with the expenditure pro-

vided for by the school budget, Code Section 2326(2) and (5).

The powers and duties imposed by the McMinn County Act upon its council and manager with reference to the disbursement of the school funds, the operation of the buses, the employment of drivers, janitors, etc. does to a large extent, for all practical purposes, if not directly, place the control of the school system of McMinn County in this council and its manager, while the schools of every other county are under the control of its board of education and school superintendent by virtue of the general law, including the Code provisions to which reference has hereinabove been made. It is, of course, a fact that a very large part of the school funds are received from the State and from sources other than county taxes. The State is interested and has attempted by general law to provide for one system of public schools in all the counties of the State. The "county board of education is a part of the State's educational system." *Boswell* v. *Powell*, 163 Tenn. 445, 448, 43 S. W. 2d 495, 496.

No reason is suggested, and none appears, as to why McMinn County should in a large measure be required to have its school affairs managed and regulated by a council or its manager (and that is the practical effect) while the schools of every other county in the State are required by the general law to be managed and controlled by its board of education and school superintendent. This Court is of the opinion, therefore, that the provisions of this McMinn County Act hereinabove referred to with reference to the schools contravenes Article XI, Section 8 of the Constitution, notwithstanding the fact that the operation of schools is a governmental affair of the county. Appropriate here is the language of this

Court in holding unconstitutional a private act applicable to Williamson County, Priv. Acts 1923, c. 45, in the case of *Berry* v. *Hayes*, 160 Tenn. 577, 28 S. W. 2d 50. ''That act provided 'that the State Highway Commission shall not have the right or power' to impose expenses upon Williamson County . . . , 'without the consent of such county' '', nowithstanding all other counties were subjected by the general law to such burden. This Court said:—

''It is clear that this act is within the prohibition of section 8, art. 11, in that it suspends a general law and grants immunities and exemptions to Williamson county which no other county may enjoy. It is arbitrary class legislation for which no possible justification can be conceived. There is no reasonable ground for granting an immunity to Williamson county which does not apply to every other county alike.'' See also *Knox County* v. *State ex rel.*, 177 Tenn. 171, 175, 147 S. W. (2d) 100.

In the case of *Crewse* v. *Beeler, supra,* this Court sustained that provision of Chapter 671 of the Private Acts of 1947 authorizing the County Commissioner to draw warrants in payment of the expense of building two particular schools from funds realized solely by a sale of county bonds. This provision of that act is to be distinguished from the school fund provision of the McMinn County Act in that the authority of the Commission was limited to a specified fund derived solely from the sale of county bonds and which they were required to expend in accordance with the direction of the county board of education.

Determination of the validity of certain particular provisions of this act hereinbefore pointed out has been declined so far because such determination at this

time is either premature or the appellants are not adversely affected by these particular provisions. In connection with this, however, the question arises as to whether the entire act would fall in the event in future appropriate litigation any or all of those provisions should be held invalid. If so, as before observed, the appellants are entitled now to a determination as to their validity. Thus proper at this point is determination of whether or not any of those provisions, if one or more should be held unconstitutional hereafter when appropriately questioned, also whether the provisions with reference to the schools and with reference to regulating guardians, trustees and administrators, which we have held unconstitutional, can be elided from the act. An important principle to keep in mind in determining this question is that "every doubt is to be resolved in favor of the validity of an act of the Legislature." *Shields* v. *Williams*, 159 Tenn. 349, 370, 19 S. W. 2d 261, 268.

The severability clause of Chapter 346 is much more liberal than the severability clause set out in *Gates* v. *Long*, 172 Tenn. 471, at page 480, 113 S. W. 2d 388, 392. As to the clause referred to in that case, this Court said that it was "the most unequivocal rescue clause contained in any statute we have seen" and that its language "must be taken into account, unless observance (thereof) would frustrate the dominant legislative intent." Section 28 of the McMinn County Act provides that if any section, clause or phrase thereof is for any reason held invalid that fact shall not impair the validity of the rest of the act, it being expressly declared that every section or clause of the act "would have been enacted irrespective of any other portion thereof being declared invalid or unconstitutional." As held in the

*Gates Case, supra,* that "language must be taken into account, unless observance (thereof) would frustrate the dominant legislative intent."

As in the acts dealing with Shelby, Knox and Polk counties sustained in the *Prescott, Troutman* and *Crewse Cases,* so also in the McMinn County Act the dominant legislative intent was to divest the Quarterly County Court, its chairman and certain other agencies of all administrative and executive duties except those given to the Quarterly Court by the Constitution and to vest those powers in this council. The McMinn County Act also provides for the giving of executive and administrative powers to this council additional to those given the Board of Commissioners in these three other counties. However, the language of the escape clause of the Mc-Minn County Act and the manifestation in the act of its dominant purpose makes it clear that the legislature would have enacted this act had these additional powers been omitted. It therefore results that if these provisions of the McMinn County Act as to the constitutionality of which we have heretofore declined to pass should in the future be held unconstitutional in a proper case challenging their validity, these provisions would simply be elided and the act would still stand. By reason of the same rule, under the severability clause of this act, those provisions thereof herein held to be unconstitutional are likewise elided. The result is that this act is not contrary to the provisions of Article XI, Section 8.

It is next insisted that the act violates Article II, Section 1 of the Constitution in that it attempts to delegate to the county council the determination of the policy of McMinn County touching the general welfare, and also attempts to empower it with authority to enact ordi-

nances, the violation of which is made a misdemeanor. With the exception of the provision authorizing the council to adopt ordinances and resolutions with reference to guardians, trustees and administrators, we think there is no more delegation of legislative authority in this act than in the Knox County Act which was upheld in the *Troutman Case*, or by general acts giving such authority to the quarterly court. This act delegates to the council the authority theretofore delegated to the quarterly court. In discussing this point in the *Troutman Case* it was held [212 S. W. 2d 37] "upon reason we see no cause for designating the county court as the exclusive agency for administering the affairs of the county if the people prefer some other form of local government." In *House* v. *Creveling*, 147 Tenn. 589, at page 597, 250 S. W. 357, 359, this Court said:— "We know, too, that the power to make rules is commonly given to boards and commissions. (Citing authorities.) These rules have the force of statutes, and their formulation is really the exercise of a legislative power. So the fact that certain limited judicial and legislative powers are conferred upon executive officers does not change their status as such officers, nor is it inappropriate or beyond the scope of a statute dealing with executive officers to confer such powers."

Since every doubt must be resolved in favor of the validity of the act, we must assume that the legislative intent was to confer upon this board only those limited legislative powers to make those rules commonly given to such boards and commissions, there being no convincing evidence to the contrary on the face of the act. If and when the council should undertake to exceed that authority then it is that its assertion may be challenged.

■ Appellants further insist that the act is broader than its caption in that (1) under Section 6 the council is authorized to determine the methods used and the work done by the tax assessor and board of equalization of the county is assessing property for taxation, and authorizes the director of finance to perform the duties governing tax assessors, and (2) authorizes the director of finance to require all officials of the county, including elective officers, to keep ledgers in a form prescribed by him, and render accounts as to funds received and disbursed, etc.

Section 6 provides that the council shall have the "power" to supervise "as fully as possible under existing general law the methods used and the work done by the County Tax Assessor in assessing property for taxation and that done by the County Board of Equalization in passing upon and equalizing the assessments made." There is a repetition of this authority found in Sections 12, subd. a and 14 of the act. The provision in the caption of the act to which the above provisions are referable is:— "providing for such improved methods in the assessment and equalization of taxable property as may be legally possible under existing general law, and in levying and collecting property taxes, licenses, fees, etc."

Section 14 contains the provision with reference to keeping the prescribed ledgers and books and accounting referred to in this insistence of appellants. That provision charges the director of finance with the keeping of all books "necessary to adequate accounting records" of the county offices and requires reports from the office showing receipt and disposition of all moneys received. It is provided therein that this requirement shall not relieve any county official of the obligation to keep such

books and make such reports ''as may be requisite to his office''. The provision in the caption of the act to which this provision is referable is ''by providing for the installation and use of a modern double-entry system of accounts to reflect all the assets and liabilities and all the income and expenditures of the government of McMinn County and its current financial condition and position''.

The language employed in the caption justifies the above stated provisions in the body of the act with reference to the tax assessor and the keeping of ledgers and accounts, etc. The argument of appellants is that these provisions in the body of the act authorized (1) the council and director of finance to perform work relative to state taxes and (2) the requirement with reference to keeping of accounts includes the offices of the clerks of the Circuit and Chancery Courts as officials of the state. It is for this reason, as we understand the brief, that appellants say the body of the act is broader than the caption.

The power of the council with reference to supervising the assessment of taxes is expressly limited by Section 6 to methods made legally ''possible under existing general laws.'' Under existing general laws the county tax assessor and the board of equalization assess the property and as an incident thereof a small amount goes into the state treasury. By Section 14 of the act it is provided that ''final responsibility for assessing property for taxation shall remain in the County Tax Assessor, and the County Board of Equalization''. The result is that this act does not alter the law with reference to the assessment by the county tax assessors and board of equalization of property for state and county taxes. The constitutional objection to this is not well taken.

 The power given the director of finance to require reports of county officers including clerks of the Chancery and Circuit Courts and accounting of moneys received and expended does not provide that such accounting shall be with reference to funds in which the county has no interest. We would have to read that provision into the act if we sustain this objection. Under that view most favorable to this contention the most that can be said is that it is capable of being construed to include funds in which the county has no interest, as well as those in which it does have an interest. Under that view of the question, we are required to adopt the construction that will render the act valid. *Soukup* v. *Sell*, *supra*. "Every doubt is to be resolved in favor of the validity" of the act. *Shields* v. *Williams*, *supra* [159 Tenn. 349, 19 S. W. 2d 268]. Our opinion is that this insistence of appellants is not substantial.

 It is also insisted that Article II, Section 17 of the Constitution is violated in that this act purports to repeal or amend former laws without reciting the title or substance of the laws affected. The title to the McMinn County Act is "An Act to reorganize the Government and Administration of McMinn County by creating and establishing . . ." Then follows an extremely detailed recitation of what it is proposed to do by this act; and then the caption concludes as follows:— "By abolishing certain boards and commissions and agencies of McMinn County and by vesting the powers and duties heretofore committed to them in the County Council; by repealing all Acts and parts of Acts in conflict herewith, including but not limited to the following Acts". Then a number of acts are specified.

In the case of *House* v. *Creveling*, *supra*, 147 Tenn, at page 601, 250 S. W. at page 360, it is said:—

"A statute entitled 'An act to reorganize the administration of the State, . . . abolishing certain offices, . . . repealing . . . acts and parts of acts,' unerringly pointed to the laws it was designed to reach.

"Such a reference is clearer and carries sharper notice of the general scope of the repeal than had an effort been made to recite in *haec verba* all the titles of all the previous acts."

By reason of this holding and others to which it is unnecessary to refer, this assignment of error is overruled.

 Finally, it is said that Article XI, Section 17 of the Constitution is violated in that Section 7(i) of the McMinn County Act "creates the office of county attorney and attempts to empower the county council to fill such office". Section 7(i) in so far as here pertinent provides "It shall have authority to employ a County Attorney, prescribe his duties and fix his compensation". It is our opinion that such county attorney is simply an employee of the county and, therefore, does not come within Article XI, Section 17.

The decree of the Chancellor is modified so as to elide those provisions of this act which have herein been held unconstitutional, and as so modified that decree is affirmed. Adjudge one-half of the cost of the appeal against appellants and the sureties on their bond and the remaining one-half thereof against McMinn County.

All concur.

CONCURRING OPINION.

NEIL, CHIEF JUSTICE (concurring).

The Private Act, Chapter 346, Acts of 1947, here assailed is the most far-reaching statute, setting up a

county government, that has ever been enacted in Tennessee. Its constitutionality is questioned by the complainants' bill upon many grounds, and particularly for its vagueness and uncertainty, and that it suspends the general law in violation of article 11, Section 8, of the Constitution.

The majority opinion pretermits a number of objections made for the reason that complainants are not in any way affected by the Act; that when certain powers of the County Council, or the County Manager, are exercised to the injury of a citizen, county official or other agency, the Court will then determine the legality of the power complained of. In addition, certain sections of the Act are elided. This is thought to be a correct solution to the problem before us. For one thing, it reserves to me and the entire Court the right to say to the County Council in the future, "Thus far you can go and no further." Considering as I do that many of the powers sought to be conferred if exercised are beyond the domain of law, I shall not hesitate to strike them down if and when occasion arises.

The Private Act under consideration goes much further and confers greater authority upon the County Council of McMinn County than does the Act of 1911 applicable to Shelby County, the Act of 1937 applicable to Knox County, and lastly the Act of 1947 creating a similar county government for Polk County.

The present Act gives the County Council full control over every county official in the county, including its personnel, finances, procedure, etc., "to direct them as broad as it is possible to delegate or confer". Section 6.

Moreover, it confers judicial powers to a County Administrative Board. In my judgment, the county tax as-

sessor becomes a mere figurehead. The Act gives an Administrative Board powers to enact ordinances, a violation of which is made a misdemeanor; it gives to said Board the right to select deputies of all county officers of the county; to supervise the procedure for the handling of trusts, guardianship and administrators' funds; it invades the exclusive power to the County Board of Education in violation of the general school law.

I concur with the majority view that Section 22, subd. c relating to the supervision and control of trust funds, and Section 14, directing the Director of Finance to issue warrants upon school funds, and Section 17 giving the Director of Highways authority over school busses and to employ and discharge drivers, etc., should be elided.

Under the general law the sheriff is the chief law enforcing officer of the county. The present Act deprives him of all authority not expressly conferred by the Constitution and the general law. And the same is true as to all other county officials. In many instances the sheriff, as well as other county officials, will have a difficult problem in deciding whether certain official duties devolve upon them or upon the County Council, its agents and directors.

Must the sheriff and his deputies act only when the County Manager or County Council gives direction? Must he wait for orders? Has he, by the provisions of this Act, ceased to be the chief law officer of McMinn County? I think every provision in the Act in which the Council or County Manager is given authority over the sheriff's office should be elided. The founding fathers of this State never intended that the authority to preserve the public peace should be confined to any official other than the high sheriff and his duly appointed de-

puties. He certainly ought not to be burdened with the task of deciding at his peril, and in derogation of the peace and good order of the county, whether it is his duty to act in a certain situation or that of the County Council.

The Act confers upon the County Council arbitrary powers such as is not found in the Shelby County, Knox County and Polk County Acts. It is, in my opinion, a revolution in county government unknown heretofore in the history of this State. If and when the citizen suffers from its possible tyranny or from lack of authority, he may appeal to the courts who alone can afford protection.

While the Court has given general approval to the Act, with certain sections elided, it must be understood that the official acts of the governing authority of the county are still open for consideration as to their constitutionality. It may be we are inviting a flood of litigation, but it cannot be avoided. It is the fault of the law.