Forrest D. Furnace *v.* City of Dayton.

(*Knoxville,* September Term, 1954.)

Opinion filed December 16, 1954.

J. C. Wasson and O. W. McKenzie, both of Dayton, for appellant.

C. P. Swafford, of Dayton, for appellee.

478

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

The Town of Dayton was incorporated by a special statute enacted in 1915, Priv. Acts 1915, Chapter 152. It was virtually given a new charter by Private Acts of 1953, Chapters 46 and 267. Pursuant to the authority of these two statutes, the City Council did in May of 1953 elect Forrest D. Furnace, the appellant here, to the consolidated offices of City Recorder, Treasurer, Superintendent of Schools and City Manager, and provided that he "shall serve for a period of twelve months from the date hereof and until his successor is elected and qualified."

At an election held in October under the authority of Code Section 3517 et seq., the residents of this municipality voted to adopt the uniform city manager and commission charter authorized by the aforesaid code

sections. The first commissioners elected under the new charter took office on December 1.

At their first meeting on this date the services of Mr. Furnace in the offices mentioned were terminated and some one else was elected city manager pursuant to the authority given in this uniform city manager and commission charter, specifically, Code Section 3554 et seq.

Furnace insisted that for each of several reasons he was legally entitled to the office and its emoluments until the expiration in May, 1954 of the term for which he was elected. The Chancellor having taken a contrary view of the matter, he has appealed.

Furnace contends that the October election for the purpose of determining whether or not these residents would adopt the charter provided by Code Section 3517 et seq. was illegal; its results, therefore, void. He bases this insistence on Section 7 of Chapter 267 of the Private Acts of 1953, reading as follows:

"That this amendatory Act shall be construed with Chapter 46 of the Private Acts of 1953 as constituting an Act to reorganize the governmental affairs of the City of Dayton and as providing a new City Manager and Commission form of Government; that this Charter of the City of Dayton shall not be subject to the provisions of the Public Acts of 1921, Chapter 173 as amended, which Act is carried into Williams Tennessee Code, Sections 3517-3646, inclusive, but said Charter of Incorporation shall only be revised, repealed or modified by Act of the General Assembly of the State of Tennessee."

Code Section 3517 makes it mandatory that the privilege of adopting the city manager and commission form of government set out in Code Sections 3517-3646 be extended to the residents of every incorporated municipal-

ity of the State who desire it. The above quoted Section 7 of this Private Act prohibits the residents of the municipality of Dayton from coming within the provisions of these Code sections. Or, differently expressed, this special statute places upon the residents of Dayton a disability not placed upon the residents of any other municipality by the general law. No reason appears, nor can one be imagined, for this discrimination against the residents of that particular municipality.

The facts above stated bring the case within the ruling of the *Stratton Claimants* v. *Morris Claimants,* 89 Tenn. 497, 522, 15 S. W. 87, 92, 12 L. R. A. 70, wherein it is held that "Citizens may be classified under article 1, § 8, of the constitution, when the object of the legislature is to subject them to the burden of certain disabilities, duties, or obligations, not imposed upon the community at large."

If this Section 7 be considered from the standpoint of the municipality of Dayton, as an entity, it is clear that it arbitrarily prohibits that municipality from changing its charter to that city manager and commission form to which the municipalities at large are entitled to change at the election of their respective residents.

The situation just stated brings the case within the ruling of *State ex rel. Bales* v. *Hamilton County,* 170 Tenn. 371, 95 S. W. (2d) 618, and *State ex rel. Smith* v. *City of Chattanooga,* 176 Tenn. 642, 144 S. W. (2d) 1096. By a Private Act in each of those cases it was sought to require the county and city, respectively, to pay their respective school teachers fixed minimum graduated salaries. The general law permits all other counties and cities to contract with their teachers as to salary, etc. Each of these special acts was held to violate Article 1, Section 8 of our Constitution.

Let it be assumed as some may argue, that this Section 7 bestows upon the municipality of Dayton, as an entity, a privilege in that it exempts that governmental entity from being required to operate under the city manager and commission charter set out in the general statute, notwithstanding the election of its residents to operate under that general statute. Under that assumption this Section 7 would have the effect of arbitrarily bestowing upon the municipality of Dayton a privilege not bestowed upon municipalities at large.

Under such assumption this Section 7 would fall within the ruling of *Taylor Theater* v. *Town of Mountain City*, 189 Tenn. 690, 227 S. W. (2d) 30. In that case a special statute proposed to authorize the operation of moving picture shows on Sunday in Mountain City without the consent of its governing body, notwithstanding the fact that the general law required such consent as a condition precedent to such operation. The act was held to contravene Article 11, Section 8 in that it extended to that municipality a privilege withheld from the municipalities at large.

Appellant's insistence that this Section 7 of this special act is constitutional is probably due to the fact that this Court in a unanimous opinion held such section appearing in another special statute constitutional in the very recent opinion of Barton v. Harrison. In an opinion to be announced this day in that case, in acting upon the petition to rehear, our former conclusion will be reversed and the section held unconstitutional. We based our first conclusion upon a misconstruction of *Williams* v. *Nashville*, 89 Tenn. 487, 15 S. W. 364. We overlooked the fact that "The situation was as that of two laws, co-existing, by either of which the same result might be accomplished, and in which resort to one would not be inconsistent with

or a suspension of the other.'' 89 Tenn. at page 492, 15 S. W. at page 365.

In supplemental brief *Hicks* v. *Rhea County,* 189 Tenn. 383, 225 S. W. (2d) 544, and *Donathan* v. *McMinn County,* 187 Tenn. 220, 213 S. W. (2d) 173, are cited in support of the insistence that this Section 7 is a valid enactment. As we understood the decision in each of those cases when written, and as we now read those decisions, each, in so far as at all applicable, is authority for the conclusion that this Section 7 violates the constitutional provisions mentioned.

In the Hicks case, it is observed, 189 Tenn. at page 394, 225 S. W. (2d) at page 549, that the Private Act in question ''is *not an encroachment on general law,* but is expressly in conformity with subsection (6) of Section 2325 of the Code * * *.'' (Italics added.)

In the Donathan case, 187 Tenn. at page 230, 213 S. W. (2d) at page 177, in upholding the validity of the Private Act it is expressly stated that ''There is no general law prohibiting the doing of any of these acts. Each affects McMinn County in its governmental capacity. A special act *not contrary to the provisions of a general law* and affecting a county in its governmental capacity may legally be enacted.''

Code Section 3518 provides that when the City Manager and commission charter provided in those Code sections has been adopted at an election, and the first Board of Commissioners has completed its organization ''thereupon any then existing charter of said city shall immediately become abrogated and null''. That provision would, per se, we think, destroy the existence of this consolidated office of city recorder, treasurer, superintendent of schools and city manager which was created by the old charter and commission to which Furnace had

been appointed under the charter now non-existent. Furnace insists, however, that his office is preserved by the closing sentence of Section 3518 providing "* * * that all ordinances, laws, resolutions, and by-laws duly enacted and in force under said preexisting charter and not inconsistent with the provisions of this chapter shall remain in full force until repealed, modified, or amended as herein provided."

■ Aside from any other valid criticism which might be directed at this insistence of Furnace, it is sufficient to say that the office which he held under the provisions of the pre-existing charter is inconsistent with the charter provided in Sections 3517-3646. The latter charter does not combine all these offices. It vests in the city manager the authority to appoint or remove heads of the departments and subordinate officers and employees. Code Section 3560. That power is withheld from the City by reason of the pre-existing charter. It is unnecessary to the point under discussion to mention other inconsistencies existing between the two charters.

That just said appears to likewise dispose of the insistence that the change from the office of city manager, etc. under the pre-existing charter to the office of city manager under the code is only colorable; hence, not effective to destroy the office held by Furnace. A very important element of the city manager-commission form of government is that of vesting in the city manager, rather than in the council, the authority and duty of appointing heads of departments and subordinate employees. The theory is that it takes the municipal government out of politics, thereby adding much to its efficiency. The pre-existing charter withheld that power from the city manager and made him a sort of handy man per-

forming the duties of other offices as well as that of a manager without appointive power.

The decree of the Chancellor will be affirmed with costs adjudged against Furnace and his sureties.