JOSEPH IDE v. THE PASSUMPSIC AND CONNECTICUT RIVERS RAILROAD COMPANY.

*Railway bond. Pleading.*

A railway bond payable to bearer is a negotiable instrument, and may be declared upon and described in an action of assumpsit as a "*bond;*" and a count thereon describing the cause of action as a "*bond,*" and setting forth the promise contained in the bond, need not aver a consideration, and may be joined with the common counts in *indebitatus assumpsit.*

The plaintiff's declaration contained six counts. The first was as follows:

" In a plea for that the said defendants, heretofore, to wit, on the first day of December, 1849, executed their bond of that date; No. 114, signed by their President, Erastus Fairbanks, and their Treasurer, Nathaniel P. Lovering, acknowledging that they were indebted to Joseph Tilden, or bearer, in the sum of two hundred dollars, and promising to pay said sum to the holder of said bond at the office of their treasurer in Boston, on the first day of December, 1856, and the interest semi-annually, and the plaintiff avers that he is owner and holder of said bond, and that the time of payment has long since elapsed, and the defend-ants, though often requested, have ever refused and neglected to pay the same when demanded at the office of their treasurer in Boston."

The second, third, fourth and fifth counts did not differ from the first in any respect, except that a bond of a different number was described in each of them. The sixth count comprised the common counts in assumpsit.

The defendants demurred specially to the declaration, on the ground that the causes of action set forth in the first five counts being upon certain bonds, could not be joined with the last count, which was in assumpsit.

But the county court, at the December Term, 1858,—POLAND, J., presiding,—adjudged the declaration sufficient, to which the defendants excepted.

*T. Bartlett*, for the defendants.

*A. J. Willard*, for the plaintiff.

REDFIELD, Ch. J.　The only question which seems to be raised in the argument of the demurrer in this case, is in regard to the form of the action and the joinder of counts. There can be no question that the whole declaration is in assumpsit. The only remaining question then seems to be, whether the term *bond*, is such an indication of the form of the contract as to exclude an action of assumpsit? It is true, in *Denton* v. *Adams*, 6 Vt. 40, the court held that the words " writing obligatory," in a declara-tion upon a jail bond, imported that the instrument was signed

and sealed, since it would not become a writing obligatory with-
out signing and sealing. These words are of the same import as
*deed in writing*, which clearly implies both signing and sealing.

Terms of this kind vary somewhat in their import with refer-
ence to the subject matter. Jail bond, and sheriff's bond, when
the statute requires them to be executed under seal, would natu-
rally enough imply sealing and signing, as has been held in regard
to the term "writing obligatory."

But we are not prepared to say that the word bond, *ex vi ter-
mini*, implies a contract under seal. The term is used in various
significations in popular language, as importing the substantive
action expressed by the verb to bind. If one is bound, he is in bonds
or under bonds. In that sense it implies nothing more than a bind-
ing contract, in whatever form. And although, in the phraseol-
ogy of the law, the term usually denotes a specialty, we do not
think it necessarily implies that, in the connection in which it is
used in this declaration. Here it is used as the name of that
class of contracts issued by railway companies, and secured by
the mortgage of their roads. These instruments are made paya-
ble to the trustee named in the mortgage, or bearer, or to bearer
generally, and pass, by delivery from hand to hand, as money.
So also with coupons attached for the semi-annual interest. They
are called bonds, or railway bonds, but they are in fact, both the
bonds and the coupons, mere bills or notes, and as strictly nego-
tiable as bank bills. They have become a kind of currency in
the country, and pass current at the banks until discredited.
They are not, or should not be, under seal, and we suppose are
not of late, certainly. And if they were, it might become neces-
sary for the courts to disregard that incident, in order to give
them that legal operation which the unwritten law of commerce
has already given them.

We think, therefore, that notwithstanding the use of the term,
bond, this declaration describes a note, or a bill, and as such, that
such contract may be declared upon, the same as bills of exchange,
or promissory notes, as an instrument importing a consideration.

It has been before held that the bearer may maintain an action
upon these instruments in his own name, both in the State and
United States' courts. It would be strange to hold otherwise

after the paper had, by common usage, become a currency of the country and the world.

In this view there is no fatal defect in the declaration, or any misjoinder.

Judgment affirmed.