THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE


JEFFERSON COUNTY, TENNESSEE, ) C/A NO. 03A01-9810-CH-00331

**FILED**

**October 13, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

                             )
         Plaintiff-Appellant, )
                             )
                             )
                             )
v.                          )

                             ) APPEAL AS OF RIGHT FROM THE
                             ) HAMBLEN COUNTY CHANCERY COURT
                             )
THE CITY OF MORRISTOWN,        )
TENNESSEE, and THE INDUSTRIAL    )
DEVELOPMENT BOARD OF         )
MORRISTOWN, TENNESSEE,        )
                             ) HONORABLE THOMAS R. FRIERSON,
II,
       Defendants-Appellees.) CHANCELLOR


For Appellant                   For Appellee The City of
                            Morristown, Tennessee

GREGORY C. LOGUE          RICHARD C. JESSEE
Woolf, McClane, Bright,         LORI L. JESSEE
   Allen & Carpenter, PLLC     Bacon, Jessee & Perkins
Knoxville, Tennessee         Morristown, Tennessee

                            For Appellee The Industrial
                            Development Board of Morristown,
                            Tennessee

                            WILLIAM O. FOUTCH, JR.
                            Morristown, Tennessee

# OPINION

Susano, J.

This appeal questions the validity of the multifaceted efforts of the City of Morristown ("Morristown") — the county seat of Hamblen County — to include 250 acres of property located in neighboring Jefferson County as a part of an industrial park to be developed by Morristown in two phases.[1] Morristown, through its Industrial Development Board ("Development Board"), entered into option agreements to purchase the Jefferson County acreage from the affected landowners. As a further part of its development plan, Morristown annexed the subject Jefferson County properties into its boundaries. The County Commission of Jefferson County ("Jefferson County") objected to the development of a public works project within its boundaries in the absence of its consent, and filed a declaratory judgment action against Morristown and the Development Board in an attempt to enjoin the defendants from purchasing any real property in Jefferson County for the proposed development without first obtaining the consent of Jefferson County. In its suit, Jefferson County also questions the constitutionality and applicability of a portion[2] of a new annexation statute of general

application, a statute that Jefferson County contends is controlling on the issue of the validity of the subject annexations. Following a bench trial, the court below dismissed Jefferson County's complaint. Jefferson County appeals, raising issues that present the following questions for our resolution:

> 1. Did the trial court err in determining that T.C.A. § 9-21-107(1) (1992)[3] is inapplicable to the facts of this case?
>
> 2. Did the trial court err in allowing Attorney Mark Mamantov to testify as to the bond community's understanding of and usage under T.C.A. § 9-21-107(1) (1992)?
>
> 3. Did the trial court err in determining that Jefferson County did not have standing to challenge Morristown's annexation ordinances?

I.

In or about 1996, Morristown embarked on a plan to expand its reservoir of industrial park acreage. The new project — known as the East Tennessee Progress Center ("the Center") — was to be developed in the same general area as that of an existing industrial park. In planning for the new site, Morristown became interested in property in neighboring Jefferson County. That property is contiguous to the property in Morristown, Hamblen County, that was to be used for the Center.

In 1998, Morristown, in conjunction with the

Development Board, entered into agreements to purchase the tracts of property that are located entirely in Hamblen County. As a part of the same project, in late 1997 and early 1998, Morristown took options on four other tracts. Each of the four tracts lies partially in Hamblen County and partially in Jefferson County. Morristown had been unable to purchase only the Hamblen County portion of these tracts because each of the property owners had refused to sell their tracts unless the transaction also included their acreage in Jefferson County. This prompted Morristown to pursue these properties by way of options. None of the acreage involved in the project was acquired through eminent domain.

On April 21, 1998, Morristown passed, on final reading, six annexation ordinances, extending its boundaries to include the Jefferson County properties under option. On May 19, 1998, Morristown passed an initial and final resolution for the issuance of bonds to purchase the Hamblen County portion of the property required for the Center. On the same date, Morristown passed a resolution to acquire the Jefferson County properties. The latter resolution specified that the Jefferson County properties would be purchased with available funds. No bond money was to be used to purchase or develop the property in Jefferson County.

On March 26, 1998, the Jefferson County Commission passed a resolution, which provided that Morristown did not

have its consent to construct a public works project, *i.e.*, the Center, in Jefferson County.

Effective May 19, 1998, the General Asssembly passed a new annexation law, which provides, in pertinent part, as follows:

> (e)(1) After May 19, 1998, a municipality may not annex by ordinance upon its own initiative territory in any county other than the county in which the city hall of the annexing municipality is located...
>
>        *   *   *
>
> (2) *This subsection (e) shall not affect any annexation ordinance adopted on final reading by a municipality prior to May 19, 1998, if such ordinance annexed property within the same county where the municipality is located or annexed property in a county other than the county in which the city hall is located if the property is used or is to be used only for industrial purposes.*

T.C.A. § 6-58-108(e) (1998). (Emphasis added).

This suit was filed on May 26, 1998. In its complaint, Jefferson County alleges that the defendants violated T.C.A. § 9-21-107(1) (1992) in that they failed to

obtain Jefferson County's consent to the construction of a public works project lying partially in Jefferson County. Jefferson County also challenges the constitutionality and applicability of Subsection (e)(2) of T.C.A. § 6-58-108 (1998), and contends that since Morristown must rely on the "unconstitutional" and "inapplicable" exception found in Subsection (e)(2) of the statute to validate its annexations, those ordinances are not valid.

The trial court concluded that T.C.A. § 9-21-107(1) (1992) is not applicable to the facts of this case. Furthermore, that court determined that Jefferson County lacked standing to challenge Morristown's annexation ordinances. Because the parties had requested an expedited hearing, the trial court found that the Attorney General had " not been afforded an adequate opportunity to be heard"; accordingly, the trial court refused to address the constitutionality of T.C.A. § 6-58-108(e)(2) (1998).

## II.

This non-jury matter is before us for a *de novo* review on the record of the proceedings below. Rule 13(d), T.R.A.P. That record comes to us with a presumption of correctness -- a presumption that we must honor unless the evidence preponderates against the trial court's factual findings. *Id.* The trial court's conclusions of law are

subject to a *de novo* review with no presumption of correctness. **Campbell v. Florida Steel Corp.,** 919 S.W.2d 26, 35 (Tenn. 1996). Therefore, we will examine the trial court's interpretation of the applicable statute unburdened by a presumption of correctness. **Myint v. Allstate Ins. Co.,** 970 S.W.2d 920, 924 (Tenn. 1998).

III.

The parties differ as to the meaning of § 9-21-107(1) (1992), which provides, in pertinent part, as follows:

> All local governments have the power and are authorized, either singly or jointly with any one (1) or more other local governments, local government instrumentalities, the state, or a state or federal agency or jointly with one (1) or more of the above, to:
>
> (1) *Engage in the construction of any public works project which may be constructed within or without the local government, or partially within and partially without the local government. However, no local government shall engage in the construction of a public works project wholly or partly within the legal boundaries of another local government except with the consent of the governing body of the other local government; provided, that any county or metropolitan government may construct a public works project within a municipality within the county or metropolitan government without the permission of the governing body of the municipality....*

T.C.A. § 9-21-107(1) (1992) (Emphasis added).  Jefferson County contends that this provision requires the consent of Jefferson County to the proposed development even though the property, by virtue of Morristown's recent annexations, is wholly within the legal boundaries of Morristown.  Morristown argues, on the other hand, that the provision does not apply when a local government constructs a public works project wholly within its own boundaries.

We agree with the trial court that this provision is somewhat ambiguous.  "A statute is ambiguous if it is capable of conveying more than one meaning."  *Browder v. Morris,* 975 S.W.2d 308, 311 (Tenn. 1998).  Does the statute mean that a municipality must obtain the consent of the county in which it is located before undertaking a public works project that lies *entirely within* the municipality's borders?  Or does the statute only mean that a municipality is required to obtain the consent of another local government when the municipality intends to develop a public works project within that other local government's territory but outside the territory of the municipality?  We believe the language of the statute can be read either way.  Hence, we find that language ambiguous.  In dealing with an ambiguous statute, we are authorized to look elsewhere in our attempt to ascertain legislative intent.  *Id.*

The language of a statute must be considered "in [the] context of the entire statute without any forced or

subtle construction which would extend or limit its meaning."

*Id.* (citing *Wilson v. Johnson County,* 879 S.W.2d 807, 809

(Tenn. 1994)).  We are also mindful that we must "construe

terms reasonably and not in a fashion which will lead to an

absurd result."  *McClellan v. Board of Regents of State Univ.,*

921 S.W.2d 684, 689 (Tenn. 1996); *Loftin v. Langsdon,* 813

S.W.2d 475, 480 (Tenn.App. 1991).


T.C.A. § 9-21-107 (1992) is part of a statutory

scheme governing the financing of public works projects

through the use of general obligation or revenue bonds.  At

trial, Mark Mamantov, an attorney with extensive experience[4]

practicing primarily in the field of such bonds, testified

that he was not aware of any instances in Tennessee where a

firm had advised a municipality to seek the consent of the

county in which the municipality is located before

constructing a public works project when the project was

located entirely within the municipality's boundaries.  While

noting that such evidence is not controlling, the trial court

in its memorandum opinion recognized that in an appropriate

case the meaning attributed to statutory language by the legal

profession is accorded some deference.  *See* *Shields v.*

*Williams,* 19 S.W.2d 261, 265 (Tenn. 1929).  Furthermore, the

trial court noted:


> [f]ollowing Plaintiff Jefferson County's
> argument to its logical conclusion, each
> occasion when a municipality would be

engaged in a public works project financed by general obligation bond funds it would be compelled to seek the consent of each county in which said municipal property was located.  Each Tennessee municipality is located within the legal boundaries of another governing body, i.e., the county in which it is located.  Under Plaintiff's interpretation of the statute in question, each time the City of Morristown would be engaged in any form of public works wholly within its legal boundaries, if financing were accomplished through general obligation bond funds, the consent of the Hamblen County Commission would be required.  Thus, a municipality's basic ability to function would be dependent upon the consent of the governing body of the county in which it was located.  Such a construction of T.C.A. 9-21-107(1) would lead to unreasonable and absurd results.

We agree with the trial court that Jefferson County's interpretation of the statutory language would produce an unreasonable and absurd result.  We find that Morristown's interpretation is a reasonable one: the statute requires a municipality to seek another local government's consent when a project of the former lies outside the municipality's boundaries.  To read the statute otherwise would require the consent of the county in which a municipality is located for the construction of every municipal public works project within the municipality's territory.  For example, if a municipality decided to build a road within its city limits, it would, according to Jefferson County's interpretation, have to secure the consent of the county in which the municipality and its new road is located.  The legislature could not have intended such an absurd result.  Therefore, we hold that

T.C.A. § 9-21-107(1) (1992) does not require a municipality to seek the consent of the county in which the municipality is wholly or partially located to construct a public works project located entirely within the municipality's borders. Hence, we find and hold that T.C.A. § 9-21-107(1) (1992) is not applicable to the facts of this case.

We find that there is an additional reason why T.C.A. § 9-21-107(1) (1992) is inapplicable to the facts of this case. The language of that statute was enacted as part of the Local Government Public Obligations Act of 1986, now codified at T.C.A. § 9-21-101 (1992), *et seq.*, which provides a comprehensive framework by which local governments may issue general obligation bonds and revenue bonds in order to finance public works projects. Thus, if a local government finances a public works project by using funds not generated by general obligation bonds or revenue bonds, T.C.A. § 9-21-107 (1992) is simply not applicable. In the instant case, the trial court made a specific finding that Morristown would not be financing any portion of the Jefferson County phase of the Center with funds generated as a result of the issuance of general obligation bonds or revenue bonds. We agree with the trial court that this is an additional reason why T.C.A. § 9-21-107(1) (1992) is inapplicable and, therefore, Jefferson County's consent was not required.

IV.

Jefferson County argues that the trial court erred in considering Mamantov's expert testimony concerning the bond community's understanding and usage under the provisions of T.C.A. § 9-21-107(1) (1992).  Specifically, Jefferson County contends that pursuant to Rule 702, Tenn.R.Evid., expert testimony is admissible only to substantially assist the trier of fact to determine a *fact* in issue, not the interpretation of a statute, which is a question of *law*.

We will not reverse a lower court's decision to admit expert testimony absent a clear showing of an abuse of discretion.  ***Miller v. Alman Construction Co.,*** 666 S.W.2d 466, 468 (Tenn.App. 1983).  "Also, it must be shown that the testimony was not only incompetent but injurious as well."  ***Id.***

We find no error in the trial court's decision to consider Attorney Mamantov's expert testimony because the customary practice of the legal profession in working under an ambiguous statute is relevant in ascertaining the purpose and meaning of the statutory language.  The Supreme Court has noted that

> [t]he meaning publicly given by
> contemporary or long professional usage is
> usually presumed to be the true one, even
> when the language has etymologically or

popularly a different meaning.  If there is ambiguity in the language, the understanding and application of it when the statute first comes into operation, sanctioned by long acquiescence on the part of the legislature and judicial tribunals, are the strongest evidence that it has been rightly explained in practice.

*Franklin Light & Power Co. v. Southern Cities Power Co.,* 47 S.W.2d 86, 90 (Tenn. 1932)(quotation marks omitted).  Furthermore, "[a] construction of a statute acted on generally by the bar of the state for many years is entitled to consideration."  73 Am.Jur.2d *Statutes* § 163 (1974).  The *fact* of the common practice of Tennessee attorneys in working under T.C.A. § 9-21-107(1) (1992) is relevant to the proper interpretation of the ambiguous language at hand, and we find no abuse of discretion in admitting the expert testimony.

Even if the trial court erred in relying on this expert testimony — a conclusion with which we cannot agree — we are unable to say, considering the record as a whole, that it was "error involving a substantial right [that] more probably than not affected the judgment or would result in prejudice to the judicial process."  Rule 36(b), T.R.A.P. Mamantov's expert testimony was not the only evidence before the trial court; obviously, that court also had before it the

language of the statute itself.  The court was bound to construe the language of the statute reasonably and in a way that would avoid an absurd result.  Applying this basic principle of statutory construction, without more, would have been a sufficient basis for the trial court's finding that the statute does not apply to the facts of this case.  Thus, we cannot say that the admission of Mamantov's testimony was reversible error.

V.

We next address the issue of Jefferson County's standing to challenge the validity of the Morristown annexation ordinances.

Standing is a judicially created doctrine that "is used to refuse to determine the merits of a legal controversy irrespective of its correctness where the party advancing it is not properly situated to prosecute the action."  *Knierim v. Leatherwood,* 542 S.W.2d 806, 808 (Tenn. 1976).  Standing " requires the court to decide whether the party has a sufficiently personal stake in the outcome of the controversy to warrant the exercise of the court's power on its behalf." *Metropolitan Air Research Testing Auth., Inc. v. Metropolitan Gov't of Nashville,* 842 S.W.2d 611, 615 (Tenn.App. 1992).  To establish standing, a party must show "not only a distinct and palpable injury but also a causal connection between the

claimed injury and the challenged conduct." *Morristown Emergency and Rescue Squad, Inc. v. Volunteer Dev. Co.,* 793 S.W.2d 262, 263 (Tenn.App. 1990). When the claimed injury involves the violation of a statute, the court must determine whether the plaintiff's interest falls within the zone of interests protected by the statute. *Carter v. Redmond,* 218 S.W. 217, 218 (1920). A party's standing does not depend on the likelihood of success of the party's claim on the merits. *Metropolitan Air Research Testing Auth., Inc.,* 842 S.W.2d at 615.

The trial court found that Jefferson County lacked standing to challenge Morristown's annexation ordinances for two reasons. First, that court determined that Jefferson County was not an "aggrieved owner of property" and thus was without standing to challenge the ordinances in a *quo warranto* proceeding. *See* T.C.A. § 6-51-103(a)(1)(A) (1998). Furthermore, the trial court noted that Jefferson County had failed to pass the necessary resolution and did not receive a petition from a majority of the property owners within the annexed territory asking the County to represent their interests so as to qualify the County as an "aggrieved owner" under T.C.A. § 6-58-108(b)(1) (1998). The trial court reasoned that because Jefferson County had neither owned property within the annexed territory nor complied with the requirements of T.C.A. § 6-58-108(b)(1) (1998), the County lacked standing to challenge the validity of Morristown's

annexations.

We agree that Jefferson County lacked standing to challenge Morristown's annexations in *quo warranto*; however, we disagree with the trial court's characterization of Jefferson County's action as a *quo warranto* action. It is clear from Jefferson County's complaint that it challenges Morristown's annexations under the Declaratory Judgment Act. We also disagree with the trial court's assertion that the exclusive method for contesting annexations is through a *quo warranto* proceeding. While *quo warranto* is the exclusive means by which a party may challenge the *reasonableness* of an annexation, the Supreme Court has held that "[t]he *validity* of an annexation ordinance alleged to exceed the authority delegated by the legislature is subject to challenge under the Declaratory Judgment Act." ***State ex rel. Earhart v. City of Bristol***, 970 S.W.2d 948, 954 (Tenn. 1998) (Emphasis added). Thus, we find that Jefferson County had standing to challenge the validity of Morristown's annexations under the Declaratory Judgment Act; the County did not have to be an "aggrieved owner" of property in order to have standing to mount a challenge to the constitutionality and applicability of T.C.A. § 6-58-108(e)(2) (1998).

The trial court's second basis for finding that Jefferson County lacked standing was founded on the doctrine of *res judicata*. The plaintiff originally brought this

litigation in the Jefferson County Circuit Court; although that court dismissed the action for lack of venue, it opined in the course of the proceedings that the plaintiff lacked standing.

We disagree with the trial court's finding that it was bound by the doctrine of *res judicata* based on the judgment of the Jefferson County Circuit Court. *Res judicata* applies only where there has been a previous adjudication on the merits. *Goeke v. Woods,* 777 S.W.2d 347, 349 (Tenn. 1989). A dismissal for lack of venue is not an adjudication on the merits. *See* Rule 41.02(3), Tenn.R.Civ.P. It matters not that the judge who heard the case in the Jefferson County Circuit Court opined that Jefferson County lacked standing; since that court determined that it could not hear the case because the venue was not in Jefferson County, its comments with respect to standing were superfluous. *Res judicata* does not apply to comments made by a court with respect to the substantive issue of standing when that court has decided that it cannot hear the case because of a lack of venue.

We find that Jefferson County did have standing in a declaratory judgment action to challenge the validity of Morristown's annexations. Jefferson County clearly had an interest in the annexations at issue because the annexations occurred with respect to property within the boundaries of Jefferson County.

Having determined that Jefferson County had standing to challenge the validity of Morristown's annexations, we now turn to the issue of the applicability of T.C.A. § 6-58-108(e) (1998).[5] Jefferson County contends that Subsection (1) of this provision applies to the subject annexation ordinances because, although they were passed on final reading on April 21, 1998, they were not *operative* as of May 19, 1998, the effective date of T.C.A. § 6-58-108(e) (1998).[6] Morristown counters that T.C.A. § 6-58-108(e) has no effect on the annexations because the ordinances were enacted on final reading on April 21, 1998; hence, according to Morristown, the language of T.C.A. § 6-58-108(e)(1) — "[a]fter May 19, 1998, a municipality may not annex" — does not apply to these *April 21, 1998* annexations. Morristown further argues that even if T.C.A. § 6-58-108(e)(1) does apply, the provisions of Subsection (e)(2) of that statute clearly exempt Morristown's ordinances from the application of the new law.

Whether T.C.A. § 6-58-108(e) (1998) applies to the instant case depends on when a territory is considered "annexed." If Jefferson County's argument is correct, a territory is not annexed until an annexation ordinance is "operative," that is, thirty days after the passage of the ordinance on final reading. *See* T.C.A. § 6-51-102(a)(1) (1998). Thus, according to Jefferson County, the language of T.C.A. § 6-58-108(e)(1) (1998) would apply to the instant case

because Morristown's annexations became "operative" after May 19, 1998, the effective date of the new annexation law, now codified at T.C.A. § 6-58-108 (1998).  Under Morristown's interpretation, a territory is annexed upon passage of an annexation ordinance upon final reading, and the fact that the annexation is suspended for thirty days to afford affected property owners an opportunity to file a court challenge is irrelevant to the question of effectiveness in the absence of a successful challenge by an "aggrieved owner" — the intended beneficiary of the 30-day "window."

In determining which annexation law applies, we agree with Morristown that a territory should be considered "annexed" when an annexation ordinance is passed upon final reading.  Although we are not aware of a Tennessee decision that directly addresses this issue, we find the Supreme Court's decision in *City of Bluff City v. Morrell*, 764 S.W.2d 200 (Tenn. 1988), to be instructive.  In that case, the city council passed an annexation ordinance on final reading.  However, prior to the operative date of the annexation, a group of residents brought a *quo warranto* proceeding challenging the annexation.  During the period of time that the annexation was held in abeyance by the *quo warranto* proceeding, the city council attempted to rescind the annexation ordinance by a motion.  The Supreme Court held that such a motion was not effective to nullify the annexation ordinance because "an act which repeals an ordinance must be

of equal dignity with the act which establishes it, and must be enacted in the same manner required for passing a valid ordinance." *Id*. at 202. In *City of Bluff City,* the delay in the operative effect of the annexation did not affect the act of annexation in such a way as to enable the legislative body to change its mind by way of motion. Extrapolating from this decision, we find and hold that an annexation ordinance is an act of annexation as of the date of its passage on final reading. The 30-day delay, in and of itself, does not change the fact of annexation; it simply postpones the date on which the annexation becomes "operative." Therefore, we believe that it is logical to conclude that the law applicable to the final act of a legislative body is the law in effect when that body takes its final action. Accordingly, we hold that the validity of the annexations adopted pursuant to the Morristown ordinances is to be determined as of April 21, 1998, the date on which the ordinances were finally acted upon by Morristown. Hence, the annexation law as it existed on that date  rather than T.C.A. § 6-58-108(e) (1998), applies to the annexations in this case. It is significant to note that Jefferson County does not contest the validity of those annexations under the law as it existed on April 21, 1998.

Even if T.C.A. § 6-58-108(e) (1998) were applicable to Morristown's annexations -- and we have held that it was not -- we cannot agree with Jefferson County's contention that the provision would invalidate Morristown's annexations. The

Legislature provided an exception to T.C.A. § 6-58-108(e)(1) (1998) that has the effect of exempting municipalities which, prior to May 19, 1998, passed on *final reading* ordinances annexing territories in a county other than the municipality's primary county if the annexed territory is to be used for industrial purposes. T.C.A. § 6-58-108(e)(2) (1998). This exception clearly addresses the facts of the instant case because the annexation ordinances — in the words of T.C.A. § 6-58-108(e)(2) — were "adopted on final reading...prior to May 19, 1998." Under the statute, it is not material that the ordinances were not operative until 30 days later. T.C.A. § 6-58-108(e)(2) (1998) defines its applicability in terms of " final reading" and not in terms of operative date; thus, Morristown's annexations are valid even if they are controlled by the new annexation law.

Finally, Jefferson County alleges in its brief that T.C.A. § 6-58-108(e)(2) (1998) should not apply because it is unconstitutional. We will not entertain this argument. If a party alleges that a statute of statewide effect is unconstitutional, the Attorney General *must* be served with notice and afforded an opportunity to be heard. T.C.A. § 29-14-107(b)(1980); Rule 24.04, Tenn.R.Civ.P.; Rule 32(a), T.R.A.P. Jefferson County's tacit, if not express, agreement not to involve the Attorney General as a trade-off for an expedited hearing precludes it from raising the constitutional issue on appeal. Having granted the request for an expedited hearing without the participation of the Attorney General, the

trial court was correct in refusing to hear the constitutional issue raised in Jefferson County's complaint. Issues that are not pursued below will not be entertained on appeal. ***Murvin v. Cofer,*** 968 S.W.2d 304, 309 (Tenn.App. 1997).

We therefore find that although Jefferson County had standing to challenge Morristown's annexations of property within Jefferson County, its challenges are without merit.

For all of the foregoing reasons, the judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant. This case is remanded to the trial court for such further proceedings, if any, as may be required and for collection of costs assessed below, all pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
Herschel P. Franks, J.